T.C. Memo. 2012-189

UNITED STATES TAX COURT

JAMES F. DRAKES AND BARBARA E. TAYLOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19209-09L.                    Filed July 11, 2012.

James F. Drakes and Barbara E. Taylor, pro sese.

<u>Robert W. Mopsick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge:</u>  Petitioners James F. Drakes and Barbara E. Taylor invoked

the Court's jurisdiction pursuant to section 6330(d)(1) to review the determination

of respondent's Office of Appeals (Appeals) sustaining a proposed levy upon their

property.[1]  Respondent sought the levy to collect from petitioners approximately $75,000 of unpaid tax liability relating to their 2007 Federal income tax return (2007 return).  After our remand of this case to Appeals to conduct a new hearing under section 6330, as well as a short trial on the issues, we decide the following two questions:  (1) whether petitioners may challenge their 2007 underlying tax liability. We hold they may not; and (2) whether Appeals abused its discretion in rejecting petitioners' offer to compromise an unpaid Federal tax liability of $75,157 for $12,000.  We hold it did not.

## FINDINGS OF FACT

The parties have filed with the Court a stipulation of facts as well as certain related exhibits, and they have agreed that all stipulated facts are conclusive.  We incorporate herein by reference the stipulation of facts and accompanying exhibits, and we find the stipulated facts accordingly.  Petitioners resided in New Jersey at the time they petitioned the Court.

Petitioners, husband and wife, each have three children born of prior marriages.  Three children were older than 22 years of age at the time of trial, and the record does not specify the ages of the other three children.  Ms. Taylor is an

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded.

auditor with UBS Financial Services (UBS), and Mr. Drakes works for Vonage Network, LLC.

Ms. Taylor was previously married to Lamont Taylor, who died in 2002 at the age of 49. Lamont Taylor bequeathed to Ms. Taylor his section 401(k) retirement account (retirement account) with a balance of more than $500,000. In 2004 Ms. Taylor rolled over the retirement account balance, at the time $581,356, into an individual retirement account (IRA). She received distributions from the IRA beginning in 2004 and continuing throughout 2007. When each distribution was made to Ms. Taylor, she was younger than 59-1/2 years old. During 2007 Ms. Taylor received taxable distributions from the IRA totaling $250,100.

The 2007 return was not made a part of this record, but the parties stipulated an Internal Revenue Service (IRS) computer transcript RTVUE listing the line items summarized on that return. According to the transcript, petitioners reported on the 2007 return wages of $211,986, State and local tax refunds of $879, taxable IRA distributions of $250,100, total income of $462,965, and itemized deductions of $99,436. Petitioners also reported additional tax on qualified plans of $20,510,[2] a

---

[2]We note that the 10% additional tax computed under sec. 72(t)(1) should be $25,010 ($250,100 taxable IRA distribution times 10% additional tax), and not $20,510 as reported on the 2007 return. Respondent does not contend, and we do not decide, whether petitioners are liable for the shortfall (assuming one exists).

total tax liability of $126,905 (including a $2,851 estimated tax penalty), and Federal income tax withheld of $57,829. Respondent assessed the tax of $126,905 reported as due on the 2007 return and credited petitioners for amounts withheld of $57,829. The balance had not been paid when the trial was held.

Respondent issued to each petitioner a separate Final Notice of Intent to Levy and Notice of Your Right to a Hearing (final levy notices) advising petitioners that respondent intended to levy upon their property to collect a $75,157 Federal income tax liability relating to the 2007 return. In response to the final levy notices, Ms. Taylor requested a hearing by submitting to Appeals Form 12153, Request for a Collection Due Process or Equivalent Hearing. That form advanced an installment agreement as a collection alternative to the proposed levy because, according to Ms. Taylor, levying on petitioners' property would have created financial hardship and other collection alternatives were available. Although the Form 12153 indicated that the hearing was also requested in response to the filing of a notice of Federal tax lien (NFTL), Appeals' case activity record indicated that no NFTL relating to petitioners' property was filed as of January 16, 2009.

After requesting the referenced hearing, Ms. Taylor submitted to Appeals a Form 656, Offer in Compromise, in respect of petitioners' 2006 and 2007 Federal

income tax liabilities and based on doubt as to collectibility.[3]  Under the terms of the offer-in-compromise, Ms. Taylor proposed to compromise the 2006 and 2007 Federal income tax liabilities for $12,000, structured as short-term periodic payments of $500 for 24 months.  Appeals assigned Settlement Officer Deborah E. Douglas (SO Douglas) to review petitioners' offer-in-compromise.  SO Douglas rejected petitioners' offer-in-compromise because, according to a letter dated May 15, 2009, petitioners were delinquent in paying their 2008 Federal income tax and they had not included tax owing for that year in their offer-in-compromise.  The letter also stated that petitioners had failed to verify they would not owe tax for 2009 even though they were required to do so.

SO Douglas held a telephone hearing with Ms. Taylor on June 24, 2009 (first hearing).  During the first hearing Ms. Taylor stated that a levy would cause her undue financial hardship and she expressed her desire to submit an offer-in-compromise as a collection alternative to the proposed levy.  The parties have stipulated Ms. Taylor did not contest petitioners' underlying tax liability for 2007 at any point during the first hearing.  In separate notices of determination dated July

---

[3]Although petitioners' 2006 and 2008 Federal income tax liabilities are not at issue here, we note that petitioners owed more than $149,037 for the 2006 and 2007 taxable years and more than $127,813 for the 2007 and 2008 taxable years.  The record does not specify the amount of the liability owed for each year.

13, 2009, Appeals sustained the proposed levy because petitioners did not prove that they had made required withholding and/or estimated tax payments with respect to their 2009 Federal income tax liabilities. Petitioners petitioned the Court to review the notices of determination on August 11, 2009. The parties stipulated, and we agree, petitioners did not challenge their underlying tax liability for 2007 in the petition.

Respondent moved the Court for summary judgment on October 14, 2009. Relying on Vinatieri v. Commissioner, 133 T.C. 392 (2009), the Court denied that motion because a triable issue of fact might have been implicated by allegations in the petition surrounding petitioners' claimed financial hardship. Respondent later moved the Court to remand this case to Appeals, and we granted respondent's motion for remand insofar as we remanded this case to Appeals to conduct a new hearing under section 6330. Appeals assigned petitioners' case on remand to Settlement Officer Lisa Wold (SO Wold), who held a face-to-face hearing with Ms. Taylor and petitioners' attorney on December 7, 2010 (second hearing). We note that petitioners' attorney has since withdrawn from the case.

The parties stipulated that Ms. Taylor did not contest the validity of petitioners' 2007 underlying tax liability during the second hearing. After the second hearing, petitioners entered into an installment agreement with the IRS

whereby they agreed to pay $1,650 per month towards their 2007 and 2008 Federal income tax liabilities. The record does not specify the extent to which (if at all) petitioners have abided by the terms of the installment agreement.

Also at the second hearing, petitioners submitted a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, along with supporting documentation. The Form 433-A reported petitioners' assets as $1,020 cash, a section 401(k) retirement account with UBS and a balance of $38,570, life insurance policies with combined cash surrender values of $6,380, two automobiles with equity of $8,800, and miscellaneous personal property valued at $5,000. Petitioners also reported owning a single family home valued at $650,000 (subject to one or more mortgages totaling $889,805), zero equity, and a monthly mortgage payment of $5,862. According to the Form 433-A, petitioners' home was the subject of a foreclosure proceeding.

Petitioners further reported on the Form 433-A disposable income of $2,257 per month. SO Wold verified (and accepted) petitioners' monthly income figure, though she determined that petitioners were able to pay $5,664 per month towards their 2007 unpaid tax liability without suffering financial hardship. The competing monthly income and expense determinations are summarized as follows:

| Income | Amount claimed | Amount determined |
|---|---|---|
| Wages (Ms. Taylor) | $3,892 | $3,892 |
| Wages (Mr. Drakes) | 12,500 | 12,500 |
| Total income | 16,392 | 16,392 |

| Expenses | Amount claimed | Amount determined |
|---|---|---|
| Food, clothing, and miscellaneous | $1,250 | $1,633 |
| Housing and utilities | 6,279 | 2,519 |
| Vehicle operating costs | 650 | 650 |
| Public transportation | 362 | 182 |
| Health insurance | 480 | 480 |
| Out-of-pocket health costs | 150 | 300 |
| Court-ordered payments | 633 | 633 |
| Life insurance | 400 | 400 |
| Taxes | 3,931 | 3,931 |
| Total living expenses | 14,135 | 10,728 |

With respect to the favorable adjustments to petitioners' expenses for food, clothing, public transportation, and miscellaneous expenses, SO Wold relied upon national and local standards to determine the additional amounts which petitioners were entitled to claim. As to the unfavorable adjustment to petitioners' housing and utilities allowance, SO Wold reasoned that petitioners should be allowed only the local standard because petitioners were not making mortgage payments. Finally, SO Wold determined that Ms. Taylor's section 401(k) retirement account with UBS

was fully available to satisfy petitioners' unpaid tax liabilities because those funds were not needed to pay living expenses.

Respondent issued to petitioners a supplemental notice of determination on December 30, 2010. The supplemental notice of determination reflected Appeals' decision to sustain the proposed levy because, as SO Wold concluded, paying $5,664 monthly rather than the $500 offered would not create a hardship for petitioners. The supplemental notice of determination detailed SO Wold's analysis, stating that Appeals had obtained verification from the IRS office collecting the tax that legal and procedural requirements had been met. The supplemental notice also concluded that the proposed collection action levy was not more intrusive than necessary because, as Appeals concluded, a levy of $5,664 per month would not impose hardship on petitioners.

OPINION

I.    Overview

The Commissioner is authorized to levy upon all property or property rights of taxpayers liable for any tax who neglect or refuse to pay that liability within 10 days after notice and demand for payment was made. Sec. 6331(a). Before the Commissioner may pursue collection by levy, however, he must notify the affected taxpayers in writing of their right to a hearing before an impartial Appeals officer.

Sec. 6330(a) and (b). Taxpayers who request a hearing under section 6330 may raise at the hearing any issue relevant to the unpaid tax or the proposed levy including, but not limited to, appropriate spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A). This Court generally lacks jurisdiction to consider taxpayers' underlying tax liability where that issue was not properly raised at the section 6330 hearing or considered in the notice of determination. See Giamelli v. Commissioner, 129 T.C. 107, 114-115 (2007).

At the conclusion of the hearing, Appeals issues a notice of determination setting forth its findings and decisions. See sec. 6330(c)(3); sec. 301.6330-1(e)(3), Q&E-8, Proced. & Admin. Regs. The determination must be based on consideration of (A) the Commissioner's verification that the requirements of applicable law and administrative procedure have been met, (B) any relevant issues relating to the unpaid tax or the proposed levy, and (C) whether the proposed levy balances the need for efficient collection of tax with the taxpayers' legitimate concern that the collection action be no more intrusive than necessary. Sec. 6330(c)(3). Where taxpayers desire judicial review of Appeals' determination, they may file a petition with this Court as petitioners have done. See sec. 6330(d)(1). In

cases where the underlying tax liability is not at issue, this Court reviews Appeals' administrative determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Abuse of discretion exists where Appeals rendered its determination arbitrarily, capriciously, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

II.     Challenge to Underlying Liability Not Allowed

Petitioners claimed for the first time at trial they are not liable for the 10% additional tax under section 72(t) even though they self-reported the tax as owing on the 2007 return. Respondent countered at trial that petitioners are precluded from challenging that liability because they did not raise the issue at either of two administrative hearings. We agree with respondent.

Taxpayers appealing a notice of determination under section 6330 generally may challenge the existence or amount of an underlying tax liability only if they did not receive a statutory notice of deficiency for the liability or otherwise receive an opportunity to dispute the liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000). For purposes of a collection review proceeding such as this, the phrase "underlying tax liability" includes the deficiency, additions to tax (including the additional tax provided by section 72(t)), penalties, and statutory interest. See Katz v. Commissioner, 115 T.C. 329, 338-339 (2000). The record

does not establish that petitioners received a notice of deficiency for 2007, and consequently a challenge to petitioners' 2007 tax liability is allowed in this judicial proceeding only if petitioners did not have a prior opportunity to contest the existence or amount of the tax administratively.  The  propriety of a challenge to petitioners' tax liability in this collection review proceeding is undermined by three stipulations stating that petitioners did not challenge the tax during the first or second hearing or in the petition.  Petitioners do not ask the Court to relieve them of the stipulations, and we decline to do so sua sponte.

A stipulation is generally treated, to the extent of its terms, as a binding and conclusive admission by the parties.  Rule 91(e).  The Court may allow a party to a stipulation to qualify, change, or contradict the stipulation upon a showing that the stipulation is contrary to the record, see Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976), or where justice so requires, see Rule 91(e).  We are unpersuaded that either circumstance is present in this case.

Petitioners had occasion at either of two collection due process hearings to challenge their 2007 tax liability but (as we find) failed to do so.  The stipulation of facts, signed by both parties, included 31 factual paragraphs, 73 pages inclusive of exhibits, and a clear and unambiguous statement that "All stipulated facts shall be conclusive."  Three stipulated paragraphs specify that petitioners' 2007 underlying

tax liability was not challenged at the first hearing, at the second hearing, or in the petition. The disputed stipulations are consistent with the evidentiary record, and we conclude that those stipulations are binding upon the parties unless justice requires that petitioners be relieved of them. See Mathia v. Commissioner, T.C. Memo. 2007-4, 93 T.C.M. (CCH) 653, 656 (2007) (unilateral mistake was not grounds for relieving Commissioner of disputed stipulations). Justice does not favor relieving petitioners of the stipulations because even if petitioners were permitted to challenge their liability for the additional tax under section 72(t), which they are not, they would not prevail. In Gee v. Commissioner, 127 T.C. 1 (2006), the Court decided whether a taxpayer-beneficiary was liable for the section 72(t) additional tax on distributions which she received from an IRA that had been partially funded with a rollover from her deceased husband's retirement account. The Court stated that when the taxpayer-beneficiary chose to roll over the funds from the retirement account into her own IRA, she became ineligible for the exception from the 10% additional tax on early distributions. Id. at 4-5. Justice does not require a party be relieved of a stipulation where, as here, the party will not prevail on the merits of the argument. Cf. Estate of Lee v. Commissioner, T.C. Memo. 2009-303, 98 T.C.M. (CCH) 657, 659-660 (2009) (justice does not favor granting a motion for leave to amend the pleadings where doing so would be futile).

Consequently, we hold petitioners may not challenge the existence or amount of the 2007 liability.

III.    No Abuse of Discretion in Rejecting Offer-in-Compromise

The second issue for decision is whether Appeals abused its discretion in rejecting petitioners' offer of $12,000 to compromise Federal income tax liabilities of $75,157.  We hold it did not.

The Commissioner is allowed to compromise any civil tax liability arising under the internal revenue laws.  Sec. 7122(a); see also sec. 6330(c)(2)(A)(iii). Pursuant to his statutory charge under section 7122(d), the Commissioner has prescribed guidelines for evaluating whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.  See sec. 301.7122-1, Proced. & Admin. Regs. (discussing compromises generally).  Under that guidance, grounds for compromise include doubt as to liability, doubt as to collectibility, and promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs. Petitioners essentially argue that Appeals was required to accept their offer-in-compromise on the basis of doubt as to collectibility and effective tax administration.  We consider each contention in turn.

The Commissioner may compromise a tax liability on the basis of doubt as to collectibility where the taxpayer's assets and income are less than the full amount of

the liability.  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  An offer-in-compromise based on doubt as to collectibility generally will be considered acceptable where it is unlikely that the full unpaid liability can be collected and the offer reflects the taxpayer's reasonable collection potential.  Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.  A taxpayer's reasonable collection potential is determined, in part, using published guidelines that establish national and local allowances for necessary living expenses.  See Internal Revenue Manual (IRM) pt. 5.15.1.7, 5.15.1.8, 5.15.1.9 (Oct. 2, 2009).

At the second hearing, petitioners submitted Form 433-A reporting assets, liabilities, and monthly disposable income.  SO Wold reviewed the Form 433-A and adjusted petitioners' expenses in accordance with the IRM, determining that petitioners could pay $5,664 per month without suffering a hardship.  The variance between petitioners' and Appeals' monthly disposable income calculations arose from two adjustments:  first, a reduction of $3,760 to their housing and utilities allowance ($6,279 reported by petitioners less $2,519 determined by SO Wold); and second, a reduction of $180 to their public transportation allotment ($362 reported by petitioners less $182 determined by SO Wold).  We conclude that SO Wold did not abuse her discretion in making either adjustment.

With regard to petitioners' housing and utilities allocation, IRS employees are instructed to allow the standard amount for housing and utilities or the amount actually spent, whichever is less. IRM pt. 5.15.1.9(1)(A). They are also instructed that where the expenses claimed for housing and utilities are more than those allowed by local standards, the taxpayers must provide documentation to substantiate that the expenses are necessary. See id. SO Wold, in an exercise of discretion, concluded that the allowable expenses for housing and utilities should be reduced to the standard amount by virtue of petitioners' nonpayment of their mortgages. As to petitioners' public transportation expense, IRS employees are advised to allow that expense in an amount fixed by reference to whether the taxpayers own a vehicle. See IRM pt. 5.15.1.9(1)(B). Where the taxpayers use public transportation and own a vehicle, as petitioners did when they submitted to Appeals the Form 433-A, the allowable public transportation expense is the amount actually incurred. Id. As explained in the supplemental notice of determination, petitioners failed to provide to Appeals proof establishing that they paid $362 per month for public transportation, and SO Wold allocated $182 under local standards. Neither adjustment was arbitrary, capricious, or without sound basis in fact or law in view of IRM pt. 5.15.1.9(1)(A) and (B) and we will uphold those determinations.

SO Wold also determined, consistent with the IRM, that Ms. Taylor's section 401(k) account balance of $38,570 was reachable by levy because petitioners did not need that income to provide for necessary living expenses. See IRM pt. 5.15.1.23 (May 9, 2008) (funds held in a retirement account are reachable by levy when the taxpayer is neither retired nor close to retirement). Thus, while Appeals did not explicitly state so in the supplemental notice of determination, respondent could reasonably expect to collect from petitioners at least $718,250 (($5,664 of monthly disposable income times 120 months in the statutory collection period) plus $38,570). See sec. 6502(a); IRM pt. 5.8.1.1.3(3) (Mar. 16, 2010) (taxpayers' offer-in-compromise based on doubt as to collectibility must usually be equal to or exceed taxpayers' reasonable collection potential). We note that petitioners' reasonable collection potential was actually higher than determined by SO Wold by virtue of their cash, the cash surrender value of their life insurance policies, and available equity in their vehicles. See, e.g., IRM pt. 5.8.5.6 (Oct. 22, 2010) (including cash and bank accounts in reasonable collection potential); id. pt. 5.8.5.8 (including cash surrender value of life insurance policies in reasonable collection potential); id. pt. 5.8.5.11 (Oct. 22, 2010) (including equity in motor vehicles in reasonable collection potential). But see id. pt. 5.8.5.10 (Oct. 22, 2010) (excluding furniture and

personal effects from reasonable collection potential of individual taxpayers).

Because petitioners' reasonable collection potential of at least $718,250 exceeded

their offer amount of $12,000, we hold that Appeals did not abuse its discretion in

rejecting their offer-in-compromise.

The Commissioner may also compromise a tax liability to promote effective

tax administration where full collection could be achieved but would result in

economic hardship, or compelling public policy or equity considerations provide a

basis for compromising the liability. See Speltz v. Commissioner, 124 T.C. 165,

172-173 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006); sec. 301.7122-1(b)(3), Proced.

& Admin. Regs. Petitioners assert in the petition that respondent's proposed levy

would leave their family "without food". Petitioners have failed to persuade us that

such is the case.

With respect to economic hardship, section 301.6343-1(b)(4), Proced. &

Admin. Regs., as made applicable by section 301.7122-1(b)(3)(i), Proced. &

Admin. Regs., states that economic hardship occurs where a taxpayer is "unable to

pay his or her reasonable basic living expenses." Section 301.7122-1(c)(3), Proced.

& Admin. Regs., lists certain factors to consider in evaluating whether collection of

a liability involves economic hardship and offers some illustrative examples. These

examples include a taxpayer who provides dependent care to a child with a serious

long-term illness, a retired taxpayer who would lack adequate means to pay basic living expenses if his retirement account was liquidated, and a disabled taxpayer with a fixed income and a modest home specially equipped to accommodate his disability. Sec. 301.7122-1(c)(3)(iii), Proced. & Admin. Regs. Petitioners' situation is distinguishable from each of the examples in the regulations. In 2007 they earned annual wages of more than $200,000 and, according to SO Wold's credible analysis, easily met their basic living expenses. As evidenced by petitioners' installment agreement, whereby they agreed to pay $1,650 per month to satisfy their 2007 and other tax liabilities, petitioners were able to pay more than they asserted in the petition. Accordingly, we conclude that Appeals was justified in rejecting petitioners' claims of economic hardship.

We similarly find no equitable considerations requiring Appeals to accept petitioners' offer-in-compromise. To the contrary, if Appeals accepted petitioners' offer to pay less than their full tax liability even though their reasonable collection potential reflected the ability to pay, other taxpayers "might lose confidence in a system that charges some but exempts others when they fail to comply." Sullivan v. Commissioner, T.C. Memo. 2009–4, 97 T.C.M. CCH 1010, 1018 (2009). We are not persuaded that effective tax administration required Appeals to accept petitioners' offer-in-compromise.

Finally, we note that Appeals did not abuse its discretion with respect to the installment agreement of May 24, 2011. While the Commissioner may generally not levy on a taxpayer's property during the period that an installment agreement is in effect, see sec. 6331(k)(2)(C), it is not necessarily an abuse of discretion to sustain a proposed levy where an installment agreement is not pending, see sec. 6331(a), (k)(1). SO Wold's case activity record establishes that the installment agreement was not pending until at least March 11, 2011, well after the supplemental notice of determination was issued. Thus, it would have been impossible for SO Wold to consider at the second hearing the question of whether the levy should not be made because of the installment agreement. Appeals is of course empowered to enter into such an installment agreement by virtue of its continuing jurisdiction under section 6330(d)(2), and respondent is generally precluded from levying on petitioners' property during the period in which that installment agreement is in effect under section 6331(k)(2)(C).

Appeals has satisfied its obligations to petitioners under section 6330. As detailed in the supplemental notice of determination, Appeals obtained verification from the IRS office collecting the 2007 liability that all requirements of applicable law, regulation, and administrative procedure had been met. SO Wold considered petitioners' offer-in-compromise but concluded the offer should not be accepted

because petitioners were able to pay $5,664 per month without suffering hardship. Finally, Appeals concluded that the proposed levy was not more intrusive than necessary because petitioners would be able to pay their necessary monthly living expenses. On the basis of the foregoing, Appeals' determination to proceed by levy is sustained.

The Court has considered all of petitioners' arguments for a contrary result, and to the extent not discussed herein, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.