T.C. Memo. 2019-97

UNITED STATES TAX COURT

BIANCA LAVINIA GILMORE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14479-17L.                     Filed August 6, 2019.

Bianca Lavinia Gilmore, pro se.

Laura J. Mullin, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, Judge: Pursuant to section 6330(d)(1),[1] petitioner seeks review of

the determination of respondent's Office of Appeals (Appeals) to sustain a

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect at all relevant times.

**[*2]** proposed levy to collect petitioner's unpaid Federal income tax liabilities for taxable years 2012 and 2015. The issues for decision are: (1) whether the underlying tax liabilities are subject to challenge in this proceeding or are otherwise incorrect and (2) whether the settlement officer (SO) who conducted petitioner's collection due process (CDP) hearing abused his discretion in sustaining the proposed levy.

## FINDINGS OF FACT

Petitioner resided in Arizona when she filed her petition.

The administrative record, as supplemented by Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for each year at issue, establishes the following matters, which the parties do not dispute.

Petitioner filed an untimely joint Federal income tax return for 2012 on February 1, 2016. Upon its receipt respondent assessed the reported liability, as well as additions to tax for failure to file timely under section 6651(a)(1), failure to pay timely under section 6651(a)(2), and failure to make estimated tax payments under section 6654.

Petitioner timely filed a Federal income tax return for 2015. Upon its receipt respondent assessed the reported liability as well as an addition to tax for failure to pay timely under section 6651(a)(2).

[*3]   On December 2, 2016, respondent issued petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (NIL) concerning the collection of her unpaid Federal income tax liabilities for 2012 and 2015.  In response, the representative holding petitioner's power of attorney[2] timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request), on petitioner's behalf.  Thereon, the representative checked the following collection alternative boxes:  "Installment Agreement", "Offer in Compromise" (OIC), and "I Cannot Pay Balance".  A document attached to the Form 12153 stated that petitioner believed the NIL to be "premature and inappropriate" and that her "current financial condition will not allow * * * [her] to full pay the tax liability."

The SO reviewed petitioner's Integrated Data Retrieval System (IDRS) transcripts and the administrative file.  He determined that (1) petitioner's CDP hearing request was timely, (2) the underlying assessments were properly made, (3) notice and demand were properly issued, and (4) there were balances due when respondent issued her the NIL.  The IDRS transcripts in the record confirm the SO's finding, which he noted in the case activity record, that petitioner filed

[2]On December 7, 2016, petitioner authorized this person to represent her before the Internal Revenue Service for any matter involving her Federal income tax for the taxable years 2003-17.

[*4] returns from 2012 through 2015, had a balance due for each of those periods, and had not made any estimated tax payments for 2016.

On February 14, 2017, the SO sent petitioner and the representative each letters acknowledging receipt of the CDP hearing request and scheduling a telephone conference with the representative for March 15, 2017. The SO requested that either petitioner or the representative provide him with, in addition to a number of other documents, "[p]roof that you are current with your estimated tax payment requirements for the Form 1040 period ending December 31, 2017" no later than March 10, 2017, adding that "Appeals cannot approve an installment agreement or accept an offer-in-compromise unless all required estimated tax payments for the current year's income tax liability have been made."

In the February 14, 2017, letter the SO referred to a previously submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, which petitioner signed and dated on December 14, 2016. Therein, petitioner calculated that she could pay $373 per month towards her outstanding tax liabilities, resulting from her reported monthly income of $10,000 less monthly expenses of $9,627. The $10,000 monthly income figure was

[*5] characterized as the net business income from an "Elderly Care Services" business petitioner operated as a sole proprietorship.[3]

On March 14, 2017, the representative faxed the SO a copy of the previously submitted Form 433-A, dated December 14, 2016, as well as some of the other requested documentation but failed to provide the SO with any documentation related to petitioner's current compliance with her estimated tax payment obligations.

On March 15, 2017, the SO held a telephone conference with the representative. Petitioner did not participate in the call. The SO first explained that he had verified that all applicable laws and administrative procedures had been satisfied in assessing the 2012 and 2015 liabilities. The SO and the representative then discussed the issues raised in the CDP hearing request. The SO's notes to the file record that the representative advised him, among other things, that petitioner: (1) sought either an installment agreement of $300 per month or an OIC, (2) did not dispute the underlying tax liabilities for 2012 and 2015, and (3) had closed her business and was now unemployed. The SO informed the representative that in order for petitioner to qualify for an installment

---

[3]Petitioner clarified at trial that her business was the operation of an assisted living facility.

[*6] agreement or OIC, he needed to receive a number of items no later than March 29, 2017, including: (1) documentation proving her compliance with, inter alia, her estimated tax payment obligations, (2) information regarding when her business closed, and (3) updated financial information reflecting her financial condition after the closure of her business.

On March 30, 2017, the SO received a fax from the representative containing some, but not all, of the requested supporting documentation. The representative stated that petitioner's business closed on June 15, 2016, but provided no documentation corroborating the date, establishing petitioner's compliance with her estimated tax payment obligations, or updating financial information reflecting her financial condition after the closure of her business.

The SO noted in his case activity record for April 14, 2017, that petitioner had not made any estimated tax payments for 2016 or 2017 as of that date. There are no further entries in the case activity record concerning estimated tax payments until the following entry on May 22, 2017: "Proposed levy action has been sustained as the * * * [taxpayer] failed to provide all required documentation and is not in current compliance."

On June 1, 2017, Appeals issued petitioner a notice of determination sustaining the proposed levy. The notice states that the SO had verified that the

[*7] requirements of applicable law and administrative procedure had been satisfied and provided details with respect to the verification. The notice also states that petitioner "did not dispute * * * [her] liability." It further states two reasons petitioner did not qualify for collection alternatives and therefore the proposed levy was sustained: (1) "The taxpayer did not provide the requested supporting documentation to support his [sic] request for an Installment Agreement or Offer in Compromise" and (2) "Additionally, the taxpayer is not in compliance with his [sic] filing requirements or estimated tax payment requirements for 2017."

Finally, the notice states that the SO balanced the need for the efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary. In this regard, the notice states that the SO concluded that a levy struck the appropriate balance, given that petitioner was ineligible for any collection alternatives in view of her failure to provide requested documentation or to be in current compliance with her estimated tax requirements.

On July 3, 2017, petitioner timely petitioned for review of the notice of determination. The petition states that petitioner's "rights as a taxpayer were not represented by * * * [her representative] to the Internal Revenue Service" and that she had revoked the representative's power of attorney as of June 15, 2017. The

**[*8]** petition further states that petitioner has "not been given legal rights as a taxpayer to present * * * [her] doubt as to liability" and that she is "asking for the opportunity to dispute * * * [her] doubt as to liability."

OPINION

I.      Administrative Hearing for Proposed Levy and Judicial Review

Section 6301 empowers the Secretary to collect the taxes imposed by the internal revenue laws.  To further that objective, Congress has provided that the Secretary may effect the collection of taxes by, among other methods, levies.  See generally Living Care Alts. of Utica, Inc. v. United States, 411 F.3d 621, 624-625 (6th Cir. 2005).  Section 6331(a) authorizes the Secretary to levy upon property or property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment are made.

When the Secretary pursues collection by levy, he must notify the affected taxpayer in writing of his right to a CDP hearing with an impartial officer or employee of Appeals.  Sec. 6330(a) and (b).  During the hearing the Appeals officer must verify that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  During the hearing the taxpayer may: (1) raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriateness of the collection action and offers of collection

[*9] alternatives such as an installment agreement or an OIC, sec. 6330(c)(2)(A); sec. 301.6330-1(e)(1), Proced. & Admin. Regs., and (2) challenge the existence or amount of the underlying tax liability, but only if he did not receive a notice of deficiency with respect to, or otherwise have an opportunity to dispute, it, see sec. 6330(c)(2)(B).

Following the hearing, the Appeals officer must issue a notice of determination concerning the proposed collection action. See sec. 301.6330-1(e)(3), Q&A-E8(i), Proced. & Admin. Regs. In making the determination the Appeals officer is required to take into consideration: (1) whether the requirements of applicable law and administrative procedure have been met; (2) any relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's legitimate concerns that the collection action be no more intrusive than necessary. Sec. 6330(c)(3); Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

If the taxpayer petitions for review within 30 days of the Appeals officer's determination, the Tax Court has jurisdiction to review it. Sec. 6330(d)(1). Where the validity of the underlying tax liability is properly at issue, the Court will review the determination regarding it on a de novo basis. Goza v.

[*10] Commissioner, 114 T.C. 176, 181-182 (2000). Where the validity of the underlying tax liability is not properly at issue, the Court will review the determination in the notice for abuse of discretion. Id. at 182.

II. Underlying Tax Liability

A taxpayer may challenge the existence or amount of the underlying tax liability during his CDP hearing if he did not receive a notice of deficiency or otherwise have a previous opportunity to dispute it. Sec. 6330(c)(2)(B). He may also dispute the liability where he reported it as due on his return (and consequently did not receive a notice of deficiency). Montgomery v. Commissioner, 122 T.C. 1, 8-9 (2004). Petitioner so reported the underlying tax liabilities at issue and seeks to dispute them in this proceeding. However, this Court may consider a challenge to the underlying tax liability only if the taxpayer raised it before the Appeals officer. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Respondent contends that petitioner failed to raise the underlying tax liabilities during her CDP hearing and therefore may not raise them in this proceeding. The SO's contemporaneous notes state that petitioner's representative advised him during a telephone conference (in which petitioner did not participate) that the underlying tax liabilities for 2012 and 2015 were not being

**[*11]** disputed.  The notice of determination so finds.  Questioned about her claim

to the contrary at trial, petitioner responded in a confusing and evasive way.[4]  We

find that the underlying tax liabilities were not challenged in the CDP hearing and

therefore under Giamelli may not now be reviewed.

Even if the underlying tax liabilities were properly at issue and subject to

our de novo review, the result in this case would be unchanged.  The challenge to

the underlying tax liabilities that petitioner advanced at trial is frivolous; namely,

that the business income from her operation of an assisted living facility was not

subject to Federal income tax because it was domestically sourced.  In petitioner's

view, only foreign-source income is subject to Federal income tax.[5]  Suffice it to

_____

[4]Under direct questioning from the Court, petitioner was unable or
unwilling to state clearly that she directed her representative to challenge the
underlying tax liabilities for 2012 and 2015 with the SO.  Instead, petitioner
appeared to confuse her liabilities for those years with the arrangements she
claimed she made to pay them.  In these circumstances, we decline to treat the
claim in her petition that her "rights as a taxpayer were not represented by * * *
[her representative] to the Internal Revenue Service" as a claim of ineffective
assistance of counsel.  Moreover, as discussed infra, the challenges petitioner
sought to make to the underlying liabilities were frivolous.

[5]Petitioner also offered various tax-protester arguments--such as the claim
that her labor is her property and therefore any income generated by her labor is
not subject to tax--in her response to a motion for summary judgment respondent
made that was denied.  Asked at trial whether those arguments were also being
advanced as challenges to the underlying tax liabilities, petitioner was evasive.
Such tax-protester arguments would not in any event cast any doubt on the

(continued...)

[*12] say that "[i]n general, all citizens of the United States * * * are liable to the income taxes imposed by the Code whether the income is received from sources within or without the United States." Sec. 1.1-1(b), Income Tax Regs.[6]

III.    Collection Alternatives

Installment agreements, OICs, and suspensions of collection activity are collection alternatives that the taxpayer may propose, see sec. 6330(c)(2)(A)(iii), and that Appeals must "take into consideration", sec. 6330(c)(3)(B), in determining whether to proceed with a proposed levy. A suspension of collection activity occurs when, pursuant to the Internal Revenue Manual (IRM), a taxpayer's account is declared "currently not collectible" (CNC) in cases of hardship. See IRM pts. 1.2.1.6.14 (Nov. 19, 1980) (Policy Statement 5-71), 5.16.1.2.9 (Aug. 25, 2014). By checking the "I Cannot Pay Balance" box on the

---

[5](...continued)
existence or amount of the underlying tax liabilities if reviewed de novo.

[6]Undertaking de novo review of the sec. 6651(a) and 6654 additions to tax that make up a portion of the underlying tax liability for each year would likewise have no impact on the outcome. The only challenge petitioner raised with respect to the additions to tax was her claim that respondent had failed to comply with the supervisory approval requirement of sec. 6751(b)(1) with respect to them. However, the sec. 6651(a) and 6654 additions to tax are exempt from the requirements of sec. 6751(b)(1). Sec. 6751(b)(2)(A).

[*13] Form 12153, the representative in effect requested that petitioner's accounts for the years at issue be placed in CNC status.

The notice of determination stated that one of the reasons for rejecting any collection alternative for petitioner was her failure to be in compliance with her current estimated tax payment obligations. It is not an abuse of discretion for an Appeals officer to deny collection alternatives because the taxpayer is not in compliance with current tax obligations. See, e.g., First Rock Baptist Church Child Dev. Ctr. v. Commissioner, 148 T.C. 380, 391 (2017); Giamelli v. Commissioner, 129 T.C. at 111-112; Hartmann v. Commissioner, T.C. Memo. 2018-154, at *9-*10; Hennessey Manor Nursing Home, Inc. v. Commissioner, T.C. Memo. 2017-97, at *12; Boulware v. Commissioner, T.C. Memo. 2014-80, at *21, aff'd, 816 F.3d 133 (D.C. Cir. 2016); Starkman v. Commissioner, T.C. Memo. 2012-236.

Petitioner submitted to the SO a Form 433-A dated December 14, 2016, indicating that she had net business income of $10,000 per month. The SO's review of petitioner's account transcripts indicated that she had made no estimated tax payments for 2016. After petitioner was afforded an opportunity to provide documents showing her compliance with estimated tax requirements and failed to do so, the SO reasonably concluded in March 2017 that petitioner was delinquent

**[\*14]** with respect to her current tax obligations--that is, her obligations with respect to 2016--and denied her any collection alternatives on that basis (among others).[7] It was not an abuse of discretion for him to do so.

In reaching this conclusion, we are mindful--given petitioner's request for CNC status, which is typically premised on a showing of hardship--that it would be an error of law and an abuse of discretion for an Appeals officer to sustain a proposed levy if execution of that levy would create economic hardship, notwithstanding the taxpayer's delinquency with respect to current tax obligations. See Vinatieri v. Commissioner, 133 T.C. 392 (2009); see also sec. 6343(a)(1)(D); sec. 301.6343-1(b)(4), Proced. & Admin. Regs. However, this case is readily distinguishable from Vinatieri. In that case, the taxpayer had documented her income and assets in detail (and the settlement officer had been able to verify same), demonstrating that a levy on her wages or car would render her unable to pay her reasonable basic living expenses. Petitioner, by contrast, submitted a

_____

[7]While the specific terms of the notice of determination state that petitioner's failure to qualify for a collection alternative was due to her failure to be "in compliance with * * * [her] filing requirements or estimated tax payment requirements for 2017" (emphasis added), we are satisfied on the basis of the SO's case activity notes that his analysis and conclusion regarding noncompliance were based upon his determination that petitioner was operating a sole proprietorship during a significant portion of 2016 that was generating net income of approximately $10,000 per month and yet had paid no estimated tax for that year. Moreover petitioner conceded at trial that she had paid no estimated tax for 2016.

[*15] Form 433-A indicating that as of three months before the conference between her representative and the SO, she had monthly income from her business of $10,000 and monthly expenses of $9,627, leaving at least a modest collection potential. To be sure, the representative also advised the SO that petitioner's business had ceased operations and that she was unemployed. In response, the SO sought additional information concerning the date of cessation and petitioner's financial condition in her postclosure unemployed status. The representative provided the business' cessation date but nothing concerning petitioner's financial condition thereafter. In these circumstances, we conclude that petitioner failed to demonstrate hardship sufficient for the SO to disregard the requirement that a taxpayer have satisfied current tax obligations in order to be eligible for a collection alternative.

IV.    Conclusion

Petitioner offered only frivolous challenges to the underlying tax liabilities. The SO's denial of any collection alternatives to petitioner because she was not current with her estimated tax obligations was not an abuse of discretion. The SO verified that the requirements of applicable law and administrative procedure were satisfied in assessing the underlying liabilities at issue, and he balanced the need for the efficient collection of taxes with petitioner's legitimate concern that the

**[\*16]** proposed collection action be no more intrusive than necessary. For these reasons, the determination to proceed with the proposed levy is sustained.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.