133 T.C. No. 16

UNITED STATES TAX COURT

KATHLEEN A. VINATIERI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15895-08L.              Filed December 21, 2009.

        R issued P a notice of intent to levy to collect
P's unpaid Federal income taxes for 2002.  P timely
requested a hearing under sec. 6330, I.R.C.

        P submitted to the settlement officer Form 433-A,
Collection Information Statement for Wage Earners and
Self-Employed Individuals, indicating she had monthly
income of $800 and expenses of $800, had $14 cash on
hand, and owned a 1996 Toyota Corolla four-door sedan
with 243,000 miles and a value of $300.  If P's wages
are levied on she will be unable to pay her reasonable
basic living expenses.  If her car is levied on, she
will be unable to work.

        The settlement officer stated in her log that P
meets the criteria to have her account reported as
currently not collectible because of hardship in
accordance with the Internal Revenue Manual (IRM).
However, R's Appeals Office issued a notice of
determination to proceed with levy, stating that P was

not entitled to collection alternatives because she had not filed her 2005 and 2007 Federal income tax returns. P timely petitioned for review of that determination under sec. 6330(d), I.R.C.  R filed a motion for summary judgment.  P, proceeding pro se, did not file a cross-motion for summary judgment.

Under regulations prescribed by the Secretary, the Secretary must release a levy upon all, or part of, a taxpayer's property or rights to property if, inter alia, the Secretary has determined that the levy is creating an economic hardship due to the financial condition of the taxpayer.  Sec. 6343(a)(1)(D), I.R.C. The regulations provide that a levy is creating an economic hardship due to the financial condition of an individual taxpayer and must be released "if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses."  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

1.  Held:  Sec. 6343(a)(1)(D), I.R.C., and sec. 301.6343-1(b)(4), Proced. & Admin. Regs., require release of a levy that creates an economic hardship regardless of the taxpayer's noncompliance with filing required returns.

2.  Held, further, a levy on P's wages or car would cause P to be unable to pay her reasonable basic living expenses, creating an economic hardship that would require release of the levy pursuant to sec. 6343(a)(1)(D), I.R.C., and sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

3.  Held, further, R's motion for summary judgment is denied because R's determination to proceed with the levy was wrong as a matter of law and, therefore, was an abuse of discretion.

Kathleen A. Vinatieri, pro se.

Martha J. Weber, for respondent.

## OPINION

DAWSON, <u>Judge</u>:  This matter is before the Court on
respondent's motion for summary judgment filed pursuant to Rule
121.[1]  Petitioner timely filed a petition pursuant to section
6330(d) appealing respondent's determination to proceed with
collection by levy of petitioner's 2002 income tax liability.
The issue to be decided is whether respondent's determination was
an abuse of discretion.

### Background

Petitioner resided in Tennessee when she filed the petition.
Her residence is an apartment that she rents for $600 per month.

On September 13, 2007, respondent sent petitioner a Final
Notice of Intent to Levy and Notice of Your Right to a Hearing
(levy notice).  The underlying tax liability was attributable to
unpaid self-assessed tax reported on her 2002 return.  Petitioner
timely requested a hearing on September 24, 2007, and the hearing
was conducted through correspondence and by telephone with the
settlement officer.

Petitioner first learned of the collection activity when her
employer notified her about the proposed levy on her wages.  When
the settlement officer asked petitioner whether she wanted to

---

[1]All Rule references are to the Tax Court Rules of Practice
and Procedure, and all section references are to the Internal
Revenue Code.

enter into an installment agreement, petitioner said "she has nothing."[2]  Petitioner told the settlement officer that she has pulmonary fibrosis and is dying.  Because of her health she can only find part-time employment.

The settlement officer could not find a record that petitioner had filed a return for 2005.  Petitioner explained to the settlement officer that the payroll company responsible for completing her 2005 Form W-2, Wage and Tax Statement, was no longer in business.  She had attempted to get the tax information from the Internal Revenue Service (IRS), but the IRS had no information regarding her income for 2005.

The settlement officer told petitioner that she might be able to have her account placed in currently not collectible status.  The settlement officer asked petitioner to submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and a diagnosis regarding her current health condition.

Petitioner sent a completed Form 433-A, indicating she had monthly income of $800 and expenses of $800, had $14 cash on hand, and owned a 1996 Toyota Corolla four-door sedan with 243,000 miles and a value of $300.  The Form 433-A reported that

---

[2]Petitioner explained to the settlement officer that she had previously agreed to pay in installments and that she was told she would be sent envelopes for each payment, but she never received the envelopes or monthly bills.

petitioner did not own any other assets. Verification received by the settlement officer was consistent with the information petitioner provided in the Form 433-A. Petitioner was unable to obtain a written diagnosis of her medical condition from her physician because her physician would provide a diagnosis only in a claim for worker's compensation.

The settlement officer's log entry dated May 15, 2008, states:

> TP [petitioner] meets the criteria to have account placed in CNC [currently not collectible] status per IRM 5.16.[1.]2.9 Hardship. The balance due is less than 10K and the TP has stated she has a terminal illness. CIS verification is not required. The TP has stated she has nothing and is not able to full pay or make payments. However, the TP is not in compliance. The TP has not filed a 2005 return and there is no record of the 2007 tax return being filed. The TP stated she does not have income information for 2005 and company that did payroll is no longer in business. TP stated she contacted IRS and they advised her they have no income information. There is no information per IRTRL. S/O [the settlement officer] contacted TP regarding filing of the 2007 return. The TP stated the return was filed late. The S/O requested the TP fax a copy of the return with the W-2. TP to fax information by 5-19-08. S/O asked TP if she obtained health diagnosis and the TP stated the doctor would only give her something if she is applying for diability. S/O requested income information for 2005 per IRPTRE.

The settlement officer's log entry dated May 20, 2008, states:

> TP did not provide a copy of 2007 return and there is no record that the return has been filed per IDRS research. The TP was employed in 2007 and is currently employed. The 2005 return has not been filed. Since the TP is not in compliance, collection alternative cannot be considered. S/O will issue determination

letter.  If the 2005 income information is received, the S/O will forward it to the TP.

Respondent issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) dated June 2, 2008, sustaining the proposed levy action and stating that, because petitioner was not in compliance with filing the required tax returns, a collection alternative could not be considered.  The notice of determination was reviewed and signed by the Appeals team manager.  The attachment to the notice of determination stated:

> The settlement officer inquired about a collection alternative and you stated you could not make payments. You stated you had pulmonary fibrosis and can only work part-time hours due to your heath condition.  The Settlement officer [who] advised you of the collection alternative however explained a collection alternative could not be considered because you were not in compliance with filing required tax returns. * * *

The attachment explained the balancing of efficient tax collection with concern regarding intrusiveness as follows:

> Appeals has verified, or received verification, that applicable laws and administrative procedures have been met; has considered the issues raised; and has balanced the proposed collection with the legitimate concern that such action be no more intrusive than necessary by IRC Section 6330(c)(3).

> Collection alternatives include full payment, installment agreement, offer in compromise and currently-not-collectible.  However, since unfiled tax returns exist, the only alternative at present is to take enforced action by levying your assets.  It is Appeals decision that the proposed levy action is appropriate.  The proposed levy action balances the need for the efficient collection of the taxes with the

> legitimate concern that any collection action be no
> more intrusive than necessary.

Neither the notice of determination nor the attachment reflect any consideration of the fact that the levy would create an economic hardship as stated by the settlement officer in her daily log and supported by the Form 433-A petitioner submitted.

Petitioner timely filed a petition in this Court challenging respondent's determination. Respondent filed the motion for summary judgment, and the Court ordered petitioner to file a response.[3] Petitioner filed a response to respondent's motion for summary judgment but did not file a cross-motion for summary judgment.[4] In her response petitioner describes her situation as follows:

---

[3]In the order we observed that our preliminary review of the record indicated that the proposed levy action involved a hardship situation and that petitioner needed the assistance of an attorney. We urged petitioner to contact the legal aid society or the local bar association pro bono services and provided their addresses and phone numbers.

[4]After petitioner filed her response to respondent's motion for summary judgment, respondent filed a motion to continue the case wherein respondent stated that petitioner was in the process of submitting a collection alternative to the IRS and that, if the alternative is accepted by the IRS, a trial in this case would not be necessary. The Court granted respondent's motion and directed the parties to file a status report on or before July 27, 2009. In a status report filed on July 17, 2009, respondent reported that respondent has not received any communication from petitioner and requested the Court to grant respondent's motion for summary judgment.

To Whom It May Concern,

I don't know what you want to know cause I don't understand all the legal stuff you sent me.  I can't afford a lawyer.  And the closest legal aid is in Knoxville 30 miles away.  My poor car will not go that far.  So I will start at the beginning of my story and see if you can help me.

I was in an unhealthy relationship for many years.  During a great deal of that time my husband was doing alcohol and drugs.  I had 2 children plus his 3 to take care of.  I had been doing janitorial work at a strip mall * * *.  It was the only place that I could work that I could take my [then] 3 year old daughter with me.  I could not support my family and pay day care.  * * * My husband took care of bills and such cause he demanded that I turn over my money.  We even got a divorce during that time cause I was not obeying him.  * * *

Now I am not looking for sympathy just understanding.  Do you know how hard it is to be a single parent?  * * * I have a high school education and nothing else.

It was nearly five years before I was notified of a problem by the I.R.S.  Danny [petitioner's former spouse] was suppose to be doing taxes.  He even made me sign a form that because he made more money he could claim my kids on his taxes cause we were no longer legally married.

I got all the W-2's from the I.R.S. except 2005 that they still have not sent me.  That is why they are not done.  I did all those taxes and forfeited the refunds.  I do not remember what that total came to.  But it was enough to pay I would say most of back taxes.  The 2007 taxes were late and I don't know why they didn't arrive.  I sent a second copy in as soon as my son gave me my copy.  He had my copy for college financial aid and he lost them for a bit of time.

I am not a rich person.  I work in a job so I can be home with my daughter.  I left my husband in July after he threatened to beat my daughter with a baseball bat.  Beating me is one thing but I could not have him beating my girl.  So I am a single parent again.  Right

now we have not had much work in nearly a year.  I have rent of 600 a mo.  Utilities of 150 and get food stamps or I wouldn't eat.  I make about 700-800 [per] month.  There are no better jobs in our town.  My daughter is only 11 so its not like I can leave her alone at night or on weekends.  D.H.S. says it's not even legal.  She is too young.  There is no child care and I have no family here.  I have pulmonary fibrosis that makes me sick all the time and the diagnosis says I have about 10 yrs to live.  Right now I can work thank God.

I did my taxes this year [for 2008] and you are getting a little over $4,700.  I'm not asking for much just a break.  You can have my tax returns [refunds ?] I don't care.  Well I do that is a tremendous loss but oh well.  I don't have any money to send you on a monthly basis.  Can we stop all the penalties.  They are killing me.  I will never be able to pay it off. * * * I let a relationship screw me up.  I am truly sorry for that and am begging for a lifeline here.  You can come to my home and see for yourself.  I don't have fancy t.v.'s or even cable except for internet.  I can't afford a phone.  My clothes have holes in them. I even cut my own hair.  If I could pay this off faster I would just to stop the nightmares it gives me.

## Discussion

A.  <u>Summary Judgment</u>

Summary judgment is used to expedite litigation and avoid unnecessary and expensive trials.  The Court will render a decision on a motion for summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.  Rule 121(b). Because the effect of granting a motion for summary judgment is to decide the case against a party without allowing that party an

opportunity for a trial, the Court should grant the motion only after a careful consideration of the case. Associated Press v. United States, 326 U.S. 1, 6 (1945); Kroh v. Commissioner, 98 T.C. 383, 390 (1992).

For purposes of respondent's motion for summary judgment, respondent has the burden of showing the absence of a genuine issue as to any material fact. Petitioner is afforded the benefit of all reasonable doubt, and the material submitted by both sides is viewed in the light most favorable to petitioner. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Kroh v. Commissioner, supra at 390.

Respondent moves the Court for summary judgment on the ground that the settlement officer did not abuse her discretion in rejecting collection alternatives and determining to proceed with levy because petitioner was not in compliance with the filing requirements. Petitioner asks that the levy not be sustained because, if her wages are taken, she will be unable to pay her basic living expenses; and, if her car is taken, she will not be able to work.

B.  Collection of Federal Taxes by Levy

If a taxpayer liable for Federal taxes fails to pay the taxes within 10 days after notice and demand, section 6331 authorizes the Secretary to collect the tax by levy upon all property and rights to property (except any property that is

exempt under section 6334) belonging to the taxpayer or on which there is a lien for the payment of the tax.

Section 6343(a)(1) provides that, under regulations prescribed by the Secretary, if the Secretary has determined that the levy is creating an economic hardship due to the financial condition of the taxpayer, the Secretary must release a levy upon all, or part of, a taxpayer's property or rights to property.[5] Sec. 6343(a)(1)(D). The regulations provide that a levy is creating an economic hardship due to the financial condition of an individual taxpayer and must be released "if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

A taxpayer alleging that collection of the liability would create undue hardship must submit complete and current financial data to enable the Commissioner to evaluate the taxpayer's qualification for collection alternatives or other relief.

---

[5]The regulations provide a method whereby a taxpayer may inform the Secretary that a levy is creating an economic hardship and request that the levy be released. See sec. 301.6343-1(c), Proced. & Admin. Regs. "A taxpayer who wishes to obtain a release of a levy must submit a request for release in writing or by telephone to the district director for the Internal Revenue district in which the levy was made." Id. However, service center directors and compliance center directors (to whom requests by taxpayers are not made) who have determined that a levy is creating an economic hardship must also release the levy and promptly notify the taxpayer of the release pursuant to sec. 301.6343-1(a), Proced. & Admin. Regs.

Picchiottino v. Commissioner, T.C. Memo. 2004-231.  The
regulations provide that, for purposes of determining the
taxpayer's reasonable amount of living expenses, any information
that is provided by the taxpayer is to be considered, including
the following:

>    (A) The taxpayer's age, employment status and
> history, ability to earn, number of dependents, and
> status as a dependent of someone else;
>
>    (B) The amount reasonably necessary for food,
> clothing, housing * * *, medical expenses * * *,
> transportation, current tax payments * * *, alimony,
> child support, or other court-ordered payments, and
> expenses necessary to the taxpayer's production of
> income * * *;
>
>    (C) The cost of living in the geographic area in
> which the taxpayer resides;
>
>    (D) The amount of property exempt from levy which
> is available to pay the taxpayer's expenses;
>
>    (E) Any extraordinary circumstances such as
> special education expenses, a medical catastrophe, or
> natural disaster; and
>
>    (F) Any other factor that the taxpayer claims
> bears on economic hardship and brings to the attention
> of the director.

Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

C.   Section 6330 Procedures

    Section 6330(a) provides the general rule that no levy may
be made on any property or right to property of any taxpayer
unless the Secretary has provided 30 days' notice to the taxpayer
of the right to an administrative hearing before the levy is
carried out.  If the taxpayer makes a timely request for an

administrative hearing, the hearing is conducted by the IRS Office of Appeals (Appeals Office) before an impartial officer. Sec. 6330(b)(1), (3).

The taxpayer may raise any relevant issue during the hearing, including appropriate spousal defenses and challenges to "the appropriateness of collection actions", and may make "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Sec. 6330(c)(2)(A). The taxpayer also may raise challenges to the existence or amount of the underlying tax liability if he/she did not receive a notice of deficiency for that liability or did not otherwise have an opportunity to dispute it. Sec. 6330(c)(2)(B).

During the hearing the Appeals officer must verify that the requirements of applicable law and administrative procedure have been met, consider issues properly raised by the taxpayer, and consider whether any proposed collection action balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. Sec. 6330(c)(3). The Appeals Office then issues a notice of determination indicating whether the proposed levy may proceed.

Under section 6330(d)(1) the taxpayer may petition this Court to review the determination made by the Appeals Office.

See sec. 301.6330-1(f)(1), Proced. & Admin. Regs.  Where, as in this case, the underlying tax liability is not at issue, we review the Appeals Office's determinations regarding the collection action for abuse of discretion.  Goza v. Commissioner, 114 T.C. 176 (2000).  An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law."  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

When a taxpayer establishes in a pre-levy collection hearing under section 6330 that the proposed levy would create an economic hardship, it is unreasonable for the settlement officer to determine to proceed with the levy which section 6343(a)(1)(D) would require the IRS to immediately release.  Rather than proceed with the levy, the settlement officer should consider alternatives to the levy.

Respondent argues under the holdings of Rodriguez v. Commissioner, T.C. Memo. 2003-153, and McCorkle v. Commissioner, T.C. Memo. 2003-34, that there is no abuse of discretion if a settlement officer rejects collection alternatives because the taxpayer was not in compliance with the filing requirements for all required tax returns.[6]

---

[6]Generally, the IRS will not grant an installment agreement, accept an offer-in-compromise, or report an account as currently not collectible if any tax return for which the taxpayer has a filing requirement has not been filed.  See Internal Revenue

(continued...)

Generally, we have found the Commissioner's policy requiring individuals seeking collection alternatives to be current with filing their returns to be reasonable.[7]  However, taxpayers in those cases have had sufficient income to meet basic living expenses.  See, e.g., Speltz v. Commissioner, 124 T.C. 165, 178 (2005) (taxpayers claimed hardship because the tax liability was disproportionate to the value that they received from initial stock offerings and because they had already been forced to change their lifestyle), affd. 454 F.3d 782 (8th Cir. 2006); Peterson v. Commissioner, T.C. Memo. 2009-46 (the Court upheld rejection of taxpayers' offer of $20,000 to compromise $70,000 liability where, although they had minimal income from Social Security retirement and disability payments, they had reasonable collection potential of $68,000 from two parcels of real property valued at $80,000); Fangonilo v. Commissioner, T.C. Memo. 2008-75 (Commissioner's refusal to treat taxpayer's tax liability as

---

[6](...continued)
Manual pts. 5.14.1.4.1(4)-(6) (Sept. 26, 2008) (installment agreements); 5.8.3.13(1), (2), (4) (Sept. 23, 2008) (offers-in-compromise); 5.16.1.1(5) and (6), 5.16.1.2.9(8) (May 5, 2009) (currently not collectible), 5.1.11.2.3 (June 2, 2004) (general collection procedures).

[7]In Estate of Atkinson v. Commissioner, T.C. Memo. 2007-89, we found reasonable requirements that an entity seeking collection alternatives to full payment, including reporting an account as currently not collectible, filing any outstanding tax returns and submitting a full financial statement and verification information for analysis.  Mandatory release of levy creating an economic hardship applies only to individuals.  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

currently not collectible was not an abuse of discretion where although taxpayer's income was not sufficient to meet his stated monthly living expenses, he had a liquid asset worth more than his tax liability); Willis v. Commissioner, T.C. Memo. 2003-302 (taxpayers' ability to make some payments toward their cumulative liability made them ineligible to have the cumulative liability classified as currently not collectible); Rodriquez v. Commissioner, T.C. Memo. 2003-153 (taxpayer had not filed returns for 12 years and did not submit all of the financial information supporting her offer-in-compromise that the settlement officer requested); Ashley v. Commissioner, T.C. Memo. 2002-286 (taxpayer had income in excess of expenses and sufficient equity in his real property to pay his tax liability in full).

We have found no cases addressing the requirement that the taxpayer be current with filing returns in a levy case involving economic hardship under section 6343(a)(1)(D) and section 301.6343-1(b)(4), Proced. & Admin. Regs.  Neither section 6343 nor the regulations condition a release of a levy that is creating an economic hardship on the taxpayer's compliance with filing and payment requirements.  The purpose of section 6330 is to "afford taxpayers adequate notice of collection activity and a meaningful hearing before the IRS deprives them of their property."  S. Rept. 105-174, at 67 (1998), 1998-3 C.B. 537, 603 (emphasis added).  A determination in a hardship case to proceed

with a levy that must immediately be released is unreasonable and undermines public confidence that tax laws are being administered fairly. In a section 6330 pre-levy hearing, if the taxpayer has provided information that establishes the proposed levy will create an economic hardship, the settlement officer cannot go forward with the levy and must consider an alternative.

D.   Appeals Office's Determination To Proceed With Levy of Petitioner's Assets

The financial information petitioner submitted on the Form 433-A, which was consistent with other information the settlement officer obtained, showed that if petitioner's wages are levied on, she will be unable to pay her basic living expenses; and, if her car is levied on, she will not be able to work. After analyzing petitioner's financial information, the settlement officer concluded that the levy would create an economic hardship and so stated in her log. However, the settlement officer determined collection alternatives to the levy, including an installment agreement, an offer-in-compromise, and reporting the account as currently not collectible, were not available because petitioner had not filed her 2005 and 2007 returns. The settlement officer's determination to proceed with the levy was reviewed and approved by the Appeals team manager who signed the notice of determination. Although the attachment to the notice of determination shows that the Appeals team manager was aware of petitioner's financial situation and health problems, the Appeals

team manager signed the notice of determination to proceed with the levy because petitioner had not filed her 2005 and 2007 returns. Proceeding with the levy would be unreasonable because section 6343 would require its immediate release, and the determination to do so was arbitrary. The determination to proceed with the levy was wrong as a matter of law and, therefore, was an abuse of discretion. Respondent is not entitled to summary judgment, and respondent's motion will be denied.

<u>An order denying respondent's motion will be issued</u>.