[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-10916

_____

KELVIN R. CREWS,

Petitioner-Appellant,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 18940-16 L

_____

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

In a long-running game of executive and judicial Telephone, we decide in this appeal whether the IRS abused its discretion in upholding planned tax penalty collections against Kelvin Crews. In 2010, the IRS assessed two tax penalties against Crews. Later, Crews asked the IRS to abate those penalties. Although the record is not entirely clear on this point, it appears that an IRS appeals officer directed the abatement of only one of Crews's two penalties. When the IRS later informed Crews that it planned to collect on his remaining tax penalty, Crews asked for a collection due process (CDP) hearing,[1] where he argued that the IRS appeals officer had directed the abatement of *both* of his tax penalties. The IRS settlement officer who held Crews's CDP hearing found that the IRS appeals officer had directed the abatement of only the one tax penalty and that the IRS's planned collection of Crews's remaining penalty was appropriate. Crews appealed this determination to the U.S. Tax Court, which affirmed.

After careful review, we find that the IRS settlement officer did not abuse her discretion in finding that the IRS appeals officer

---

[1] A CDP hearing is an administrative hearing that, on a taxpayer's request, the IRS Appeals Office must conduct before it collects a tax or tax penalty it has assessed against the taxpayer. *See* 26 U.S.C. § 6330(a)–(b). At the hearing, the taxpayer may raise any relevant issues that "relat[e] to the unpaid tax or the proposed levy, including . . . challenges to the appropriateness of [the] collection action[]." *Id.* § 6330(c)(2)(ii).

had directed the abatement of only one of Crews's tax penalties and in upholding the IRS's planned collection of Crews's remaining tax penalty.  Thus, we affirm the decision of the Tax Court.

## I.    Background

### A.  Trust Fund Recovery Penalties and the Process of Assessing and Collecting Them

The Internal Revenue Code (IRC), 26 U.S.C. § 1 *et seq.*, requires employers to deduct income, Social Security, and Medicare taxes from their employees' wages and pay those taxes directly to the IRS.  *See id.* §§ 3102(a), 3402(a).  The taxes employers withhold from their employees' wages are known as "trust fund taxes." *Slodov v. United States*, 436 U.S. 238, 243 (1978).  If an employer fails to deliver the trust fund taxes it has collected from its employees to the IRS, the IRS may attempt to collect the trust fund taxes directly from the employer, *see* 26 U.S.C. § 3403, or may assess trust fund recovery penalties (TFRPs) equal to the amount of the unpaid taxes against "[a]ny person required to collect, truthfully account for, and pay over" trust fund taxes, *id.* § 6672(a).  A person who is "required to collect, truthfully account for, and pay over" trust fund taxes is referred to in case law as a "responsible person." *Thosteson v. United States*, 331 F.3d 1294, 1299 (11th Cir. 2003).

When the IRS decides to assess a TFRP against a person responsible for collecting and delivering an employer's trust fund taxes, it must first notify that person of the planned tax assessment. *See* 26 U.S.C. § 6672(b).  The taxpayer may then appeal the planned

tax assessment to the IRS Appeals Office. *See Romano-Murphy v. Comm'r*, 816 F.3d 707, 711 (11th Cir. 2016). If the taxpayer does not appeal the planned assessment within a certain time—or if the taxpayer's appeal is denied—the IRS may proceed to assess the TFRP.[2] *See* 26 U.S.C. § 6672(a)–(b).

Once the IRS has assessed the TFRP, it can collect the TFRP from the taxpayer, which it does by levying the taxpayer's property.[3] *See id.* § 6331(a). Before it levies a taxpayer's property, the IRS must inform the taxpayer of its intent to levy and of the taxpayer's statutory right to a CDP hearing. *See id.* § 6330(a).

At the CDP hearing, the taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy, including . . . challenges to the appropriateness of collection actions; and . . . offers of collection alternatives . . . ." *Id.* § 6330(c)(2)(A)(ii)–(iii). However, the taxpayer may not challenge the "existence or amount of the underlying tax liability" if he or she had a previous opportunity to do so. *Id.* § 6330(c)(2)(B). In addition to considering whatever challenges to the planned tax collection the taxpayer raises, the settlement officer conducting the CDP hearing must consider whether "the requirements of any applicable law or

---

[2] A tax assessment is a "formal determination that a taxpayer owes money" that "serves as the trigger for levy and collection efforts." *Romano-Murphy*, 816 F.3d at 710 (quotations omitted).

[3] "A levy is a legal seizure of [a taxpayer's] property to satisfy a tax debt." *What Is a Levy?*, IRS, https://www.irs.gov/businesses/small-businesses-self-employed/what-is-a-levy (last visited November 9, 2021).

administrative procedure have been met" and "whether [the] proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *Id.* § 6330(c)(1)–(3). If the settlement officer upholds the IRS's planned tax collection at the CDP hearing, the taxpayer may appeal that determination to the Tax Court. *Id.* § 6330(d)(1).

## B. Crews's Businesses and Tax Deficiencies

In the early 2000s, Crews founded a small company, Erosion Stopper, Inc., that provided environmental services like groundwater and construction site cleanup. Initially, Crews was Erosion Stopper's owner and president. In 2002 or 2003, Crews transferred ownership of Erosion Stopper to his wife, LouAnn Crews. After the ownership transfer, Crews's wife became Erosion Stopper's president and oversaw the company's administrative, finance, and office operations while Crews ran the company's field operations.

In 2006, Crews's wife incorporated a second environmental services company, K.C. Earthmovers, Inc. Afterward, the Crewses operated their environmental services business under both the Erosion Stopper and K.C. Earthmovers names. Crews's wife was initially K.C. Earthmovers's owner and president. Later, the Crewses' adult daughter served as K.C. Earthmovers's owner and president.

After a few years, the Crewses got behind on delivering to the IRS the trust fund taxes they withheld from the wages of the employees of Erosion Stopper and K.C. Earthmovers. In early

2010, the IRS sent Crews several letters in which it proposed assessing TFRPs against Crews for Erosion Stopper's and K.C. Earthmovers's trust fund tax deficiencies.[4]  In those letters, the IRS informed Crews that it considered him to be an "individual[] who [was] required to collect, account for, and pay over" Erosion Stopper's and K.C. Earthmovers's unpaid trust fund taxes.  The IRS also informed Crews of his right to appeal the proposed TFRP assessments to the IRS Appeals Office.  Crews did not appeal the proposed assessments, and in June 2010, the IRS assessed TFRPs against Crews for Erosion Stopper's and K.C. Earthmovers's tax deficiencies.

### C.  Crews's Tax Abatement Proceedings

Between 2010 and 2012, Crews paid a small amount of the TFRPs the IRS had assessed against him.  Crews then filed a claim with the IRS in which he requested a refund of the small amount of the TFRPs he had paid and an abatement of his remaining penalties relating to both Erosion Stopper's and K.C. Earthmovers's tax deficiencies.  Crews's abatement claim was assigned to an IRS tax examiner, Sheneka Bradwell, who denied it.  Crews then appealed Bradwell's denial of his abatement claim to the IRS Appeals Office.  In his letter appealing the denial of his abatement claim,

---

[4] Erosion Stopper's trust fund tax deficiencies were from four tax quarters— the second, third, and fourth quarters of 2008 and the first quarter of 2009. K.C. Earthmovers's trust fund tax deficiencies were from seven tax quarters— the second, third, and fourth quarters of 2008 and all four quarters of 2009.

Crews asserted that the TFRPs the IRS had assessed against him were improper because he "[was] not responsible for the unpaid taxes due to the fact that [he] was not in charge of any financial matters with Erosion Stopper[]/K.C. Earthmovers at any time during their operations."

Crews's appeal of the denial of his abatement claim was assigned to an IRS appeals officer, Victoria Johnson. In October 2012, Johnson sent Crews and his wife a letter scheduling a conference with them to discuss their challenges to their respective TFRPs.[5] The heading of Johnson's letter referenced four tax quarters—the second, third, and fourth quarters of 2008 and the first quarter of 2009. Those were the four tax quarters for which Erosion Stopper had outstanding unpaid trust fund taxes.

In December 2012, the Crewses' counsel met with Johnson. Before and after that meeting, the Crewses' counsel sent Johnson several letters explaining Crews's position regarding the TFRPs the IRS had assessed against him. In a letter they sent to Johnson prior to the December 2012 conference, the Crewses' counsel asserted that Crews "[was] not liable for the [TFRPs] assessed against him" regarding either Erosion Stopper's or K.C. Earthmovers's trust fund tax deficiencies because he was not a "responsible person"

_____

[5] At some point—the record does not indicate when—the IRS assessed separate TFRPs against Crews's wife for Erosion Stopper's trust fund tax deficiencies, and Crews's wife appealed or requested an abatement of those TFRPs. Johnson jointly handled Crews's appeal of the denial of his abatement claim and Crews's wife's appeal regarding her TFRPs.

who was required to collect, account for, or pay over those taxes to the IRS. The Crewses' counsel asserted that Crews's "position with Erosion Stopper, Inc. and K.C. Earthmovers, Inc. was Field Manager," in which capacity "[h]e did not review or maintain employee records, verify hours worked, or determine the proper amounts to be paid to the various employees" and "had no knowledge or computer skills to access payroll, bills, or any other financial information." In a letter they sent Johnson shortly after the December 2012 conference, the Crewses' counsel stated:

> We write in follow-up to our meeting of Thursday, December 6, 2012. As I understand it, based upon numerous factors, you will be recommending a full and complete concession of the [TFRP] tax assessments against our client, Kelvin R. Crews, for the various tax quarters involved.

The heading of that letter from the Crewses' counsel referenced both Erosion Stopper and K.C. Earthmovers and listed all of the tax quarters for which both companies had unpaid trust fund taxes.

In May 2013, Johnson sent Crews a letter, the header of which referenced K.C. Earthmovers—and identified the seven tax quarters for which K.C. Earthmovers had unpaid trust fund taxes— but did *not* reference Erosion Stopper. The letter stated:

> We have considered your protest and the evidence and arguments in support of your position against the Trust Fund Recovery Penalty assessment.

> We are returning your case file to the Area Directory with the determination that you be relieved of liability for the tax periods indicated above.[6]

Johnson never sent Crews a letter referencing or resolving his request for abatement of his TFRPs relating to Erosion Stopper's tax deficiencies.

While Crews's administrative appeal of the denial of his abatement claim was pending, Johnson recorded several notes about the appeal proceedings in an IRS internal case activity file.[7] In May 2013, shortly before she sent Crews the letter directing abatement of his TFRPs relating to K.C. Earthmovers's tax deficiencies, Johnson recorded the following entries in Crews's case activity file:

> AO determined that TP is not responsible or acted willfully.

> AO spent most of the day completing Request for Adjustment form to remove all the assessed penalties.

> TP is not a responsible person within the meaning of IRC 6672.

---

[6] On the same day she sent Crews this letter abating his TFRPs for K.C. Earthmovers's tax deficiencies, Johnson sent Crews's wife a separate letter sustaining her TFRPs for Erosion Stopper's tax deficiencies.

[7] The entries in the IRS internal case activity file use frequent shorthand. In the entries we discuss below, (1) "AO" or "A/O" means appeals officer; (2) "TP" or "tp" means taxpayer; and (3) "POA" means power of attorney, *i.e.*, the Crewses' counsel in their proceedings before the IRS.

The case activity file does not make clear whether these entries related to only Crews's K.C. Earthmovers-related TFRPs or to both those TFRPs and his Erosion Stopper-related TFRPs.

While Crews's appeal was pending, Bradwell, the IRS examiner who had originally denied his abatement claim, also recorded some notes about the matter in a separate IRS internal recordkeeping system. In May 2013, shortly before Johnson sent Crews the letter directing the abatement of his K.C. Earthmovers-related TFRPs, Bradwell recorded the following entry in the internal recordkeeping system: "Called and spoke w/ Victoria Johnson [and] addressed status of the case. She advised that the tp was found not liable and the assmts are being abated against him." A week later, Bradwell recorded an entry stating: "The TFRP assmt was total[l]y abated against Mr. Crews."

### D. Crews's Collection Due Process Proceedings

After Crews's appeal proceedings regarding his abatement claim were closed, the IRS proceeded to abate his K.C. Earthmovers-related TFRPs but *not* his Erosion Stopper-related TFRPs. In late 2015 and early 2016, the IRS sent Crews two notices of intent to levy his property to collect his unpaid Erosion Stopper-related TFRPs. In response, Crews requested a CDP hearing.

Crews's CDP proceedings were assigned to an IRS settlement officer, Cathleen Curry. On June 30, 2016, Curry held a CDP hearing with Crews and his counsel. At the CDP hearing, Crews challenged the IRS's planned collection of his Erosion Stopper-

related TFRPs on only one ground: that the IRS erred in pursuing collection of those TFRPs because the IRS appeals officer who handled Crews's appeal from the denial of his abatement claim had in fact directed the abatement of both his K.C. Earthmovers-related TFRPs *and* his Erosion Stopper-related TFRPs.  After the CDP hearing, the Crewses' counsel sent Curry a letter reiterating Crews's position that "an administrative determination of non-liability was previously made [by the IRS Appeals Office]," that "the administrative file should show a full concession for *both* corporations," and that "the current TFRP assessments are void, illegal, or improper as they should have been abated or written off."

Before and after she held the CDP hearing with Crews and his counsel, Curry received and reviewed several files relating to the original assessment of Crews's TFRPs and Crews's appeal from the denial of his request to abate those TFRPs.  While Crews's CDP proceedings were pending, Curry recorded the following entries in the IRS internal case activity file for the matter:

> [I]ndepth review of case file. . . .  The related corp KC Earthmovers has already been abated. . . .  Letter in file from AO V Johnson concerns 1st TFRP KC Earthmovers and this amount abated already, nothing in file to indicate abatement in order for the related corp.

> Went over huge amounts and stacks of information from POA.  The letters all addressed to prior A/O working the TFRP appeal on KC conceded but yet no

> letter was provided from A/O working the case ad-
> dressing the Erosion Stopper Inc. . . .

> Although the TFRP was abated for KC Earthmovers,
> Inc. there is no indication in Appeals history that the
> related corp Erosion Stopper for which tp still [as-
> serts] challenges was addressed.

Although Curry reviewed various relevant records, it ap-
pears she was unable to retrieve and review some of the records
from either Bradwell's original denial of Crews's abatement claim
or Johnson's determination of Crews's appeal from that denial. In
June 2016, Curry recorded this entry in Crews's case activity file:
"TFRP file for erosion has been ordered from [IRS] records center."
In July 2016, Curry emailed an IRS examiner asking her to "retrieve
the [Form] 843 Claim file for Kelvin Crews."[8]  The IRS examiner
responded: "This was already worked on by Victoria Johnson of
Appeals.  I do not have the 843 claim because after 2 years the file
[gets] destroyed."

> Additionally, in June 2016, Curry emailed Johnson:

> Was wondering if I could pick your brain about a case
> you previously worked the TFRP issue.  The POA
> states that when you worked [the] case you indicated
> both TFRPs should be abated in full for taxpayer. . . .

---

[8] Form 843 is the IRS form a taxpayer uses to file a tax abatement claim such
as Crews's. *See About Form 843, Claim for Refund and Request for Abate-
ment*, IRS, https://www.irs.gov/forms-pubs/about-form-843 (last visited
November 9, 2021).

20-10916                Opinion of the Court                13

> Do you recall whether both TFRPs should have been abated?

Johnson responded, "The TP should have a copy of my closing letter." Curry then responded to Johnson:

> I need to get a copy of your Appeals history . . . and any closing documentation you may have retained for the [Crews] case you previously worked in Appeals regarding a previous 843 TFRP claim.
>
> I attempted to get the closed Appeals file from the Advisory Unit but they have informed me it has been destroyed.

Johnson responded, "I don't have anything. I can't access my I: drive right now. But I am sure it is not there either. I back up all my cases in a thumb drive." Curry wrote back, "Can you check your thumb drive to see if you may be able to pull it up," to which Johnson responded, "I do not have anything for this tp." Afterward, Curry obtained a copy of Johnson's entries in Crews's case activity file from Johnson's manager.

In late July 2016, Curry met again with the Crewses' counsel. At that meeting, Curry explained that her review of the records from Crews's appeal of the denial of his abatement claim did not indicate that Johnson had directed the abatement of his Erosion Stopper-related TFRPs. Curry then sent Crews a determination letter formally resolving his CDP proceedings and upholding the IRS's planned collection of Crews's Erosion Stopper-related TFRPs. That letter stated, in relevant part:

On 6/30/2016, a [CDP] hearing was held in the Jacksonville Federal Office Building. You and your representative, Keith Johnson, were present. . . . You and Mr. Johnson stated that a prior appeal was worked which would have addressed the TFRP that was assessed against you regarding 2 different corporations, namely Erosion Stopper, Inc. and KC Earthmovers, Inc. . . . You indicated that you would like the previous appeal file regarding a Claim to be reviewed. . . .

The paperwork was subsequently ordered for the previous Appeal Claim File worked and there was no indication that the TFRP was conceded regarding Erosion Stopper, Inc.

. . .

The Collection File and IRS records were reviewed along with the information you provided. My review confirmed that the IRS followed all legal and procedural requirements, and the actions taken or proposed were appropriate under the circumstances.

### E. Crews's Appeal to the Tax Court

Crews appealed Curry's decision upholding the IRS's planned collection of his Erosion Stopper-related TFRPs to the Tax Court. In his petition to the Tax Court, Crews stated that he "[was] not seeking a determination [regarding his Erosion Stopper-related TFRPs] on the merits, but merely a determination that the previous administrative review by the Office of Appeals resulted in a full concession and that the existing liabilities remain due to a clerical

or ministerial mistake on behalf of [the IRS]." Crews and the IRS jointly moved to submit Crews's appeal on the basis of a stipulated record. The Tax Court granted that motion and decided the appeal based on the parties' stipulated facts and attached exhibits.

In his filings in the Tax Court, Crews argued, as he had at the CDP stage, that the record showed that Johnson had directed the abatement of his Erosion Stopper-related TFRPs during her review of Crews's appeal from the denial of his abatement claim.[9] He also argued that, during the CDP proceedings, Curry failed to acquire all of the IRS records that were relevant to her review of that issue. Crews argued that the appropriate standard for the Tax Court's review of Curry's CDP determination was *de novo*, while the IRS argued that the standard was abuse of discretion.

---

[9] Crews argued in the alternative that the Tax Court should find that Johnson's review of his Erosion Stopper-related TFRPs was still pending in the IRS Appeals Office. The Tax Court ruled that this argument was not properly raised because Crews had not asserted it at his CDP hearing and declined to consider it.

In his appeal to this Court, Crews does not dispute the Tax Court's decision not to consider his alternative argument. Instead, Crews asserts in passing that, if we find the administrative record "inconclusive," we should find that his administrative appeal "is still pending with the [IRS] Office of Appeals." Crews's argument that his administrative appeal is still pending in the IRS Appeals Office is not properly raised or briefed, and we do not consider it. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

The Tax Court affirmed Curry's decision to uphold the IRS's planned collection of Crews's Erosion Stopper-related TFRPs. It did not resolve the parties' dispute about what standard of review it should apply to Curry's CDP determination, finding that affirmance was appropriate under either a *de novo* standard or an abuse-of-discretion standard. The court held that "Officer Johnson did not determine to relieve Crews of the TFRPs related to Erosion Stopper," or, alternatively, that Curry "did not abuse [her] discretion in concluding that [Johnson] did not make such a determination."

In affirming Curry's CDP determination, the Tax Court found "the strongest evidence of the scope of Officer Johnson's determination [of Crews's appeal from the denial of his abatement claim] [was] her letter of May 23, 2013, in which she stated that she had made the 'determination' to relieve Crews of TFRPs. This determination letter referred to K.C. Earthmovers and not Erosion Stopper." The Tax Court noted that, although some entries in the IRS's internal record systems by Johnson and by the examiner Bradwell were ambiguous about the scope of the abatement of Crews's TFRPs, none of the entries clearly indicated that Crews's Erosion Stopper-related TFRPs were part of the abatement Johnson directed. The Tax Court also found that Curry, in her review of Johnson's determination at the CDP stage, "took reasonable steps to ascertain whether Officer Johnson had determined that Crews was not liable for the TFRPs with respect to Erosion Stopper."

Crews filed post-trial motions in the Tax Court that were denied, after which he timely appealed.

## II.    Standard of Review

We review "decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district court in civil actions tried without a jury." 26 U.S.C. § 7482(a). We review an IRS determination to uphold a planned tax collection following a CDP hearing for abuse of discretion.[10] *See Roberts v. Comm'r*, 329 F.3d 1224, 1228 (11th Cir. 2003). The IRS abuses its discretion when it acts "arbitrarily, capriciously, or without sound basis in fact or law." *Vinatieri v. Comm'r*, 133 T.C. 392, 400 (2009).

## III.    Discussion

Turning to the merits, we must decide in this appeal whether the Tax Court rightly decided that an IRS settlement officer who reviewed an IRS appeals officer's determination of Crews's appeal from the denial of his tax abatement claim did not

---

[10] Citing to the legislative history of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105–206, 112 Stat. 685—the Act of Congress that created CDP hearings—Crews argues that we should review the IRS's decision to uphold his planned tax collection *de novo* because he has challenged the "validity" of his tax liabilities. It is unclear why Crews thinks the legislative history of the Restructuring and Reform Act should inform our standard of review. In any case, Crews's argument has no merit on its own terms—as he conceded in the Tax Court, he has not presented argument or sought a determination on appeal regarding the merits of his underlying tax liabilities, and we do not review them.

abuse her discretion by finding that the appeals officer had directed the abatement of only one of Crews's two tax penalties. This appeal is not about whether Crews's outstanding Erosion Stopper-related tax liabilities have legal merit under the IRC. It is about only whether, as a factual matter, the IRS settlement officer abused her discretion in determining, based on the evidence available at Crews's CDP hearing, that those liabilities are still on the IRS's books.

The first, and primary, issue on appeal is whether the record shows that the settlement officer Curry abused her discretion in finding that the appeals officer Johnson directed the abatement of Crews's Erosion Stopper-related TFRPs. Following Crews's CDP hearing, the settlement officer Curry found that Johnson had directed the abatement of Crews's K.C. Earthmovers-related TFRPs but not his Erosion Stopper-related TFRPs. Crews argues that the evidence shows that Johnson actually directed the abatement of both sets of penalties.

The evidence cuts both ways. Some parts of the record support Crews's position. It is clear that Crews initially requested an abatement of both his K.C. Earthmovers-related TFRPs and his Erosion Stopper-related TFRPs, a request that the examiner Bradwell denied. Crews then sent a letter to the IRS Appeals Office appealing Bradwell's denial of his abatement claim in which he referenced both sets of liabilities and asserted that he should not be responsible for either. After Crews's appeal was assigned to her, Johnson sent Crews and his wife a scheduling letter that referenced

20-10916                Opinion of the Court                19

the four tax quarters for which Erosion Stopper had outstanding unpaid trust fund taxes, which suggests, perhaps, that the topic of the planned conference between Johnson and the Crewses was the Erosion Stopper-related TFRPs the IRS had assessed against both Crews and his wife.  The Crewses' counsel then sent letters to Johnson asserting that Crews was not responsible for Erosion Stopper's tax liabilities and later attempting to confirm that Johnson "w[ould] be recommending a full and complete concession of the [TFRP] tax assessments against [Crews]."[11]

Some of Johnson's and Bradwell's entries in the IRS's internal records also somewhat support Crews's position.  Johnson wrote in Crews's case activity file that she had "determined that TP is not responsible or [did not] act[] willfully," that "TP is not a responsible person within the meaning of IRC 6672," and that she had completed forms to "remove all the assessed penalties."  In May 2013, around the time Johnson issued the letter directing the abatement of Crews's K.C. Earthmovers-related TFRPs, Bradwell wrote in a separate recordkeeping system that she had spoken with Johnson, who advised her "that the tp was found not liable and the assmts are being abated," and Bradwell later wrote that "[t]he

_____

[11] Crews claims that, at the December 2012 conference Johnson held with the Crewses' counsel, Johnson "stated that she agreed with Crews' position, and that all of the penalties would be abated."  Crews points to nothing in the record to support this assertion.  There is no transcript of the conference between Johnson and the Crewses' counsel.  Crews cites no affidavits or declarations in the record averring to what Johnson and the Crewses' counsel discussed at the conference.

TFRP assmt was total[l]y abated." These entries from Johnson and Bradwell suggest—but do not explicitly indicate—that Johnson intended to direct the abatement of all of Crews's TFRPs.

On the other hand, as the Tax Court emphasized, the determination letter that Johnson actually sent to Crews, in which she expressly directed the abatement of his K.C. Earthmovers-related TFRPs, did not mention his separate Erosion Stopper-related TFRPs. We agree with the Tax Court that "the strongest evidence of the scope of Officer Johnson's determination is [this] letter." Indeed, the parties stipulated in the Tax Court that "Johnson's determination letter does not mention petitioner's TFRP liabilities for Erosion Stopper" and that "Johnson did not issue a determination letter for petitioner's TFRP liabilities for Erosion Stopper."[12] In her correspondence with Curry, when asked "whether both TFRPs

---

[12] Crews argues that Johnson's determination letter was not in the proper form prescribed by internal guidelines set out in the IRS's Internal Revenue Service Manual (IRM). Similarly, Crews asserts that Johnson failed to produce an "Appeals Case Memorandum," which is apparently a standard type of IRS case summary document, and that Johnson failed to close out both of Crews's appeals as required by the IRM.

Crews's reliance on the IRM is misplaced. The IRM is an internal IRS document that "does not have the force of law." *Griswold v. United States*, 59 F.3d 1571, 1576 n.8 (11th Cir. 1995). And in any event, these alleged "process errors" in Johnson's handling of Crews's appeal do not bear on whether Johnson in fact directed the abatement of all of Crews's TFRPs—which is the question at hand.

should have been abated," Johnson did not indicate that they should have been.

On this record, we cannot say that Curry abused her discretion by finding that there was insufficient evidence to show that Johnson had directed the abatement of Crews's Erosion Stopper-related TFRPs, and by therefore upholding the IRS's planned collection of those liabilities. The most direct piece of evidence in the record regarding the scope of the IRS's abatement of Crews's TFRP liabilities—Johnson's determination letter—indicated that the IRS abated only Crews's K.C. Earthmovers-related TFRPs. Although some of the other evidence in the record weighed in Crews's favor, Curry did not act "arbitrarily, capriciously, or without sound basis in fact or law" in finding, based on the strongest evidence available, that the IRS did not abate Crews's Erosion Stopper-related TFRPs. *See Vinatieri*, 133 T.C. at 400.

Crews raises a second, related issue on appeal as well: whether Curry failed to review all the records she should have in assessing whether Johnson directed the abatement of Crews's Erosion Stopper-related TFRPs. Crews asserts that Curry failed to obtain and review the "appeals claim file" from Crews's administrative appeal proceedings and that Curry misled Crews "about the nature and scope of her review."

The record indicates that, during the course of Crews's CDP proceedings, Curry was unable to obtain some of the records from either Bradwell's original denial of Crews's abatement claim or Johnson's determination of Crews's appeal from that denial. Curry

asked an IRS examiner for Crews's "843 Claim file" and was told that it had been destroyed. Curry then asked Johnson to provide the "Appeals history" and "closing documentation" from Crews's case, and Johnson told Curry that she no longer had any files from the matter. It is unclear precisely what materials Curry expected the "843 Claim file" or the "Appeals history" to contain.

That some of the records from Crews's case that Curry tried to obtain were apparently missing does not show, or indicate, that Curry abused her discretion in her handling of Crews's CDP proceedings. The record indicates that Curry tried to obtain various records from Crews's case from multiple sources but was told those records no longer existed. In a declaration submitted in the Tax Court, Curry averred that she was able to retrieve and review other relevant records, including Crews's case activity file, correspondence between Johnson and the Crewses' counsel, and other case summaries, notes, and transcripts. In fact, the parties stipulated in the Tax Court that Curry "reviewed the administrative record, including the Appeals Claim File from Appeals Officer Johnson, and determined there was no evidence Appeals Officer Johnson conceded petitioner's TFRP liabilities for Erosion Stopper." Curry did not issue her determination of Crews's CDP hearing "arbitrarily, capriciously, or without sound basis in fact or law." *Vinatieri*, 133 T.C. at 400. The record indicates that she made her determination based on the evidence available to her, which she went to substantial lengths to collect.

Finally, Crews asserts that Curry "purposely or inadvertently misled Crews' Counsel about the nature and scope of her review" because she falsely told Crews that she "conducted a full and complete review of [Crews's] administrative file." The record does not support this assertion. In her determination letter resolving Crews's CDP proceedings, Curry informed Crews that "[t]he paperwork was subsequently ordered for the previous Appeal Claim File worked and there was no indication that the TFRP was conceded regarding Erosion Stopper." Nothing about that statement appears to be untrue. Curry *did* order various files from Crews's appeal—some of which she was able to retrieve and others of which she was told no longer existed—and resolved Crews's proceedings based on the materials available.[13] She did not abuse her discretion in doing so.

## IV.    Conclusion

Because the IRS did not abuse its discretion in upholding its planned collection of Crews's tax liabilities, we affirm the decision of the Tax Court.

**AFFIRMED.**

---

[13] Crews argues that we should apply the doctrine of spoliation to infer that the materials Curry was unable to obtain would have shown that his Erosion Stopper-related liabilities should have been abated. That argument is off-base. Spoliation sanctions may be warranted "when [an] absence of [] evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). Crews has provided no evidence indicating that Curry or anyone else at the IRS destroyed any records from his case in bad faith.