# United States Tax Court

T.C. Memo. 2026-55

FREDERICK WHIGHAM,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 10832-23L.                                   Filed June 24, 2026.

————————

Frederick Whigham, pro se.

*Jeffrey W. McCray*, for respondent.


## MEMORANDUM OPINION

JENKINS, *Judge*: In this collection due process (CDP) case, petitioner timely filed a Petition under section 6330(d)(1),[1] requesting that this Court review a Notice of Determination Concerning Collection Actions under IRS Sections 6320 or 6330 of the Internal Revenue Code (NOD) issued by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals) sustaining a levy with respect to petitioner's federal income tax liabilities for his 2011, 2014, 2015, and 2017 tax years. Respondent filed a Motion for Summary Judgment (Motion) contending that Appeals did not abuse its discretion. For the reasons discussed herein, this Court agrees with respondent and will grant the Motion.

————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]**                    *Background*

The following facts are based on the parties' pleadings, the Motion, and the Administrative Record. *See* Rules 93, 121(c). The facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Missouri when the Petition was filed.

I.      *Underlying Liabilities and Levy Notice*

Petitioner did not timely file returns for the 2011, 2014, and 2015 tax years; accordingly, the IRS prepared Substitutes for Returns (SFRs) pursuant to section 6020(b) for the 2011 tax year in 2014 and for the 2014 and 2015 tax years in 2017. IRS transcripts show that petitioner and his wife filed an amended tax return for the 2015 tax year on March 15, 2018. They also show that the liabilities for the 2011, 2014, and 2015 tax years include tax, additions to tax under sections 6651(a)(1) and (2) and 6654, and amounts of interest that were assessed starting on December 17, 2018. Notes from the IRS Collection function (Collection) indicate that petitioner's wife spoke with Collection multiple times in 2019 about balances due with respect to the couple's 2011, 2013, 2014, and 2015 tax years. According to the notes, returns for those years, all showing much smaller amounts of tax, were submitted in one envelope, and only the return for the 2015 tax year was processed. The liability for the 2017 tax year includes tax reported on a return filed late by petitioner and his spouse, as well as additions to tax under section 6651(a)(1) and (2) and interest assessed on April 5, 2021.

The IRS issued petitioner and his wife, Beverly Whigham, a Notice CP90, Notice of Intent to Seize Your Assets and of Your Right to a Hearing, dated August 30, 2021. The Notice shows a total balance owed of $157,682.18 related to the tax years 2011, 2014, 2015, and 2017.

II.     *CDP Hearing Request and Preliminary Interactions*

A Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated September 22, 2021, was filed for petitioner and his wife. There was no dispute of the amount or validity of the tax liability reflected on this form. It simply had a checked box for "I Cannot Pay Balance" and no other checked boxes for potential collection

**[\*3]** alternatives.[2] In an attachment, petitioner explained: "I have been struggling to live financially. In June of this year, my wife had a brain aneurysm. Her social security will be used to pay for her required nursing home care. My residence has been foreclosed. I must move by October 11, 2021. I don't have money to pay this CP90 notice."

On November 22, 2022, a settlement officer (SO) began working on petitioner's and his wife's case, confirming that she had no prior involvement with the taxpayers for the types of taxes and the 2011, 2014, 2015, and 2017 tax years. The IRS sent a letter dated November 22, 2022, addressed to the Whighams stating that the CDP hearing was scheduled for December 15, 2022. The letter requested, among other documents, a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, bank statements, and statements of "all other sources of income such as . . . rental income." It also requested tax returns for the 2020 and 2021 tax years and indicated that if petitioner wanted the IRS to reconsider the liabilities for the 2011, 2014, and 2015 tax years, he would be required to submit tax returns for those years. On December 9, 2022, petitioner called the SO to discuss what information he needed to send. The SO listed the items of information that were requested in the letter from November 22, 2022. Petitioner stated that his wife had passed away and indicated that she had previously handled their financial recordkeeping.

Petitioner then submitted Form 433–F, Collection Information Statement, dated December 10, 2022, rather than the Form 433–A that the SO had requested. Like Form 433–A, it asks for various items of financial information, including bank accounts, real estate holdings, credit cards, and monthly living expenses. On Form 433–F, petitioner listed only one bank account, a personal checking account for which he provided a bank account statement. Petitioner also reported four items of real property, with two reported on Form 433–F itself and the other two not on an additional sheet, as instructed, but in a separate table. The properties' reported current values collectively amounted to $257,691. Petitioner stated that all four properties had various liens on them. However, he indicated lien amounts for only two of the four properties, amounting to $48,000 in total, and provided no documentation supporting those amounts. He provided mortgage

---

[2] The Form 12153 explains, above those boxes: "If, during your CDP hearing, you think you would like to discuss a Collection Alternative to the action proposed by the Collection function it is recommended that you submit a completed Form 433A (Individual) . . . ."

[*4] statements showing aggregate outstanding principal amounts of $32,213 on two of the properties. For all but two types of income listed in the section "Non-Wage Household Income," petitioner filled in either a positive number or "0." The two exceptions were "Net Rental Income" and "Other," which petitioner left blank. Petitioner reported $1,991 of monthly income and $2,257 of monthly expenses, including $1,000 of rent, which corresponds to the $1,000 monthly mortgage payment that he reported with respect to his primary residence.

Petitioner also provided Forms 1040, U.S. Individual Income Tax Return, for the 2020 and 2021 tax years, with signatures for both him and his wife dated December 10, 2022, reflecting them both as retired. The 2020 tax return reported $24,632 of rents received, $6,027 of depreciation, and $2,830 of net rental income on the basis of rental income from four properties. The 2021 tax return reported $87,223 of rents received, $52,000 of depreciation, and $8,669 of net rental income from the same four properties.

Furthermore, petitioner provided, without explanation, a number of medical bills addressed to his deceased spouse, some significant, along with a few for relatively small amounts addressed to him. Petitioner also provided bills and delinquency account notices (some duplicative) from the Metropolitan St. Louis Sewer District reflecting balances due of $4,259.62, $9,689.65, and $17,778.53 with respect to different properties. The notices indicate that if the amounts were not paid, other collection action might be taken, "up to and including referral to a collection agency, property lien, and lawsuit." Petitioner also provided a bill from the Office of the Collector of Revenue, City of St. Louis, reflecting amounts owed to the Water Division and Refuse Division totaling $8,050.87. He also included a handwritten note dated January 8, 2022, indicating that he owed $1,100,000 to BMO Harris Bank and $91,000 of Missouri sales tax.

III.   *CDP Hearing*

The CDP hearing was held by phone in two parts, on December 15, 2022, and January 19, 2023. Petitioner did not dispute the amounts or the validity of the tax liabilities in the CDP hearing. On the first phone call, on December 15, 2022, the SO verified the information that petitioner reported on Form 433–F. The SO told petitioner that the equity in his properties would likely result in a determination that he could not be put in currently not collectible (CNC) status. During that call, petitioner acknowledged that he received rental income from at

[*5] least one of the properties that he had not disclosed on his Form 433–F. The SO told petitioner that rental income was considered income, indicated that she would need to consider petitioner's assets, obtained confirmation that he had submitted all the paperwork for his real properties with his December 10, 2022, submission, and asked to continue the hearing.

On the second phone call, on January 19, 2023, the SO asked petitioner for verification of his rental income. When he advised that it was deposited into another bank account, she requested that he also submit statements for all of his open bank accounts. She also requested properly signed tax returns for the 2020 and 2021 tax years. She requested that all of the requested items be submitted by January 26, 2023. During the call, the SO told petitioner that she would request a review and investigation of petitioner's properties to determine his ability to pay the tax liabilities. She followed up with a letter to petitioner to the same effect dated the same day. And the SO requested an Appeals Referral Investigation (ARI) that same day and received an analysis from Collection in response on April 12, 2023.

Collection indicated that IRS records showed $51,000 in rents from the "MISSOURI HOUSING DEV COMMISSION" in 2021, along with other rents for a total of more than $61,000 for the year.[3] Collection indicated that the potential equity in the two of petitioner's four properties reported on the Form 433–F was $197,023 but did not indicate the equity in the other two properties, simply noting their existence, and therefore concluded that petitioner's total equity, including cash, was $198,923. The SO concluded on the basis of the rental income determined by Collection and the Social Security income and expenses reported by petitioner that petitioner would be able to make monthly payments that would satisfy his balance. Therefore, she concluded that there was no hardship that warranted placing the account in CNC status.

The SO sent petitioner a letter dated April 12, 2023, to transmit the analysis by Collection and schedule a conference call to discuss it on May 2, 2023. Despite having been instructed to submit additional information to the SO by January 26, 2023, for consideration by Collection, petitioner did not submit any additional information until May 1, 2023, when he submitted Form 433–A. This form shows $625 of

---

[3] This calculation is consistent with the gross rental income petitioner reported on his 2021 tax return.

**[\*6]** monthly net rental income, but petitioner still did not provide any information about the bank account into which rental income was deposited, reporting only the same checking account as reported before. The Form 433–A shows total monthly income as $2,725 and, excluding $91,000 of newly reported delinquent state or local tax, shows total monthly living expenses of $2,182. Petitioner listed the same property values on this form as he had on the earlier Form 433–F, although he added a mortgage balance for one of the properties for which he had previously provided only a monthly payment amount. Even though petitioner submitted Form 433–A late, the SO still considered it before making her determination.

On the call on May 2, 2023, the SO informed petitioner that her review did not support a finding that petitioner was unable to pay his liabilities. On the basis of the equity in petitioner's properties, the SO determined that petitioner could afford to pay the liabilities in full. Petitioner asked what evidence he could send to prove his inability to pay, but the SO replied that she had already reviewed the issue and would not consider it again. A Form 5402–c, Appeals Transmittal and Case Memo – CDP, dated May 24, 2023, indicates that although petitioner stated that "there was no ability to pay the balance, the provided financial information did not support a financial hardship and no acceptable collection alternative could be agreed to."

IV.  *NOD*

Appeals issued the NOD, dated June 9, 2023, sustaining the proposed levy action. The attachment to the NOD indicates that Appeals verified that the requirements of any applicable law or administrative procedure were met and that records confirmed the proper issuance of the notice and demand, notice of intent to levy, and notice of a right to a CDP hearing. It further explains that assessments were properly made, that notice and demand was mailed to petitioner's last known address, and that there was a balance due when the notice of intent to levy was issued. It indicates that the SO had no prior involvement with petitioner for the specific tax periods.

The attachment notes that the tax liabilities are attributable to SFRs for the 2011, 2014, and 2015 tax years and to a self-filed return for the 2017 tax year. It notes that petitioner offered no collection alternative. It also notes that petitioner indicated that there was no ability to make payment on the balance owed but provided documentation showing ability to fully pay the balance with equity and

**[\*7]** assets and the ability to make monthly payments. Therefore, it concludes, there is no financial hardship that warrants CNC status. With regard to the balancing analysis, it again notes that despite petitioner's claim of financial hardship, the information provided does not support the claim and no collection alternative could be agreed to. Therefore, it concludes: "[T]he proposed levy action, despite the acknowledged intrusiveness of the action on the taxpayer, is necessary as there exists no current means for the government to efficiently collect the tax other than the levy action proposed."

V.      *Petition and Motion*

Petitioner petitioned this Court for review of the NOD. The Petition states that petitioner does not have the money to pay the tax liabilities and that his properties require substantial repairs to make them habitable or salable. The Petition further states that petitioner's tax returns for the 2011, 2014, 2015, and 2017 tax years were prepared by H&R Block, not by petitioner himself. Despite this Court's allowing petitioner an extended period of almost three months to file a response to respondent's Motion, petitioner did not do so.

*Discussion*

I.      *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 121(a)(2). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, 98 T.C. at 520; *see also* Rule 121(c)(1). The Court will "view the factual materials and inferences drawn from them in the light most favorable to the nonmoving party." *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rely merely on allegations or denials but must instead "set[] forth specific facts . . . to show that there is a genuine dispute of fact for trial." Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Because petitioner did not respond to the Motion, this Court could enter decision against him for that reason alone. *See* Rule 121(d). This Court nevertheless considers the Motion on its merits and concludes

[*8] there is no genuine dispute of material fact and that this case is appropriate for summary adjudication.

II.    *Standard of Review*

In a CDP case in which the underlying tax liability is not at issue, the Court reviews the Commissioner's determination for abuse of discretion. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). The underlying tax liability is not at issue before the Court if the taxpayer did not raise that issue at the CDP hearing. *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013); *Giamelli v. Commissioner*, 129 T.C. 107, 114 (2007). It is unclear whether petitioner's claim in his Petition that the returns were not self-filed because they were prepared by H&R Block is intended to be a dispute of his tax liabilities. Petitioner's wife apparently raised a dispute with some of the liabilities with Collection several years before the CDP hearing request; however, petitioner did not include this dispute on the CDP hearing request that he filed in their names, and he did not raise it during the hearing. Accordingly, petitioner cannot dispute the underlying liabilities before this Court. Therefore, this Court reviews Appeals' determination for abuse of discretion.

A determination constitutes abuse of discretion if it is "arbitrary, capricious, or without sound basis in fact or law." *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). In reviewing for abuse of discretion, the Court looks to the reasons offered in the determination, as supplemented by other documents in the administrative record, such as case activity notes. *See Serna v. Commissioner*, T.C. Memo. 2022-66, at *8.

III.    *Evaluation of Appeals' Determination*

In determining whether abuse of discretion occurred in a CDP case, the Court considers whether the settlement officer (1) verified "that the requirements of any applicable law or administrative procedure" were met, (2) considered "any relevant issue relating to the unpaid tax or the proposed levy" that the taxpayer raised at the hearing, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." § 6330(c).

[*9]  A.  *Verification*

The Court reviews the verification requirement of section 6330(c)(1) even if the taxpayer did not raise that issue at the CDP hearing. *Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). This Court concludes, from a review of the Administrative Record, that the SO conducted a thorough review of the record and verified that all applicable requirements were met. Accordingly, this Court concludes that there was no abuse of discretion with regard to the verification requirement.

B.  *Issue Raised at the CDP Hearing*

Petitioner raised exactly one issue at the CDP hearing: inability to pay. For the reasons discussed herein, this Court finds that the SO's review of petitioner's ability to pay was appropriate.

CNC status may be available if a taxpayer can demonstrate that, on the basis of his assets, equity, income, and expenses, he has no apparent ability to make payments on the outstanding tax liability. *See* Internal Revenue Manual (IRM) 5.16.1.2.9(1) (Apr. 13, 2021);[4] *see also Siebert v. Commissioner*, T.C. Memo. 2021-34, at *31. An account is not to be placed in CNC status if the taxpayer has income or equity in assets and enforced collection of the income or assets would not cause hardship. IRM 5.16.1.2.9(1). Hardship exists if a taxpayer is unable to pay reasonable basic living expenses. *Id.*

At the CDP hearing, the SO verified the financial information that petitioner had previously provided. She also considered the updated financial information that petitioner provided several months after the CDP hearing before making her determination. However, petitioner only belatedly provided any information about how much rental income he claimed to receive and did not support it with any records, despite the SO's having requested them for more than six months. Therefore, the SO reasonably relied on the information provided by Collection pursuant to the ARI concerning petitioner's rental income, which was consistent with information that petitioner had reported on his income

---

[4] Citations in this Opinion are to provisions of the IRM as in effect during the relevant portion of Appeals' consideration of petitioner's case.

[*10] tax return.[5] In any event, petitioner's own calculations indicated that he could pay living expenses other than his rent/mortgage from nonrental income and that he could pay all of his expenses (including housing) from the self-reported income (including the self-reported net rental income).

Additionally, as the SO informed petitioner at the CDP hearing, even petitioner's own estimate of the value of his properties was sufficient to support a determination that he was able to fully pay the liabilities. On the basis of his reported values and the mortgage principal amounts reflected on bank statements, petitioner had $225,478 of equity in real property. And even ignoring the two properties that petitioner had not reported directly on Form 433–F, Collection determined equity in real property of $197,023. Despite all of the documentation that petitioner provided of various expenses, he provided no evidence that undercut the equity determined on the basis of his own reporting and no evidence that he could not borrow against or sell his real properties. *Cf. Orum v. Commissioner*, 123 T.C. 1, 13 (2004) (concluding that Appeals does not abuse its discretion in rejecting collection alternatives because of the taxpayer's failure to submit financial information), *aff'd*, 412 F.3d 819 (7th Cir. 2005); *Mackland v. Commissioner*, T.C. Memo. 2025-69, at *14–15 (concluding that Appeals did not abuse its discretion in rejecting a collection alternative given that the taxpayer provided no evidence of an attempt to access equity in real estate). Accordingly, the SO did not abuse her discretion in concluding that petitioner had not established that he was eligible for CNC status.[6] *See Margolis-Sellers*, T.C. Memo. 2019-165, at *44–45

---

[5] Furthermore, it is notable that the amount of net rental income reported on the May 1, 2023, Form 433–A is in the same ballpark as the net rental income reported on petitioner's 2021 tax return after taking into account depreciation, which would not be taken into account for purposes of determining collection potential. *See* IRM 5.15.1.18(2) (Aug. 29, 2018); *see also* IRM 5.16.1.2.9(5) (referencing the financial analysis guidelines for purposes of evaluating CNC status).

[6] As additional justification for the SO's determination, respondent argues that in failing to report his rental income and the bank account into which the rental income was deposited, petitioner failed to meet the good faith requirement of Treasury Regulation § 301.6343-1(b)(4)(iii). That rule requires that a taxpayer act in good faith to obtain a release of a levy on the basis of economic hardship, which the taxpayer fails to do if, for example, he inflates expenses or fails to make full disclosure of assets. In considering such an argument previously, the Court has noted that "the hardship analysis for determining CNC status is essentially the same as that for determining release of a levy because of economic hardship pursuant to [section] 6343." *Margolis-Sellers v. Commissioner*, T.C. Memo. 2019-165, at *45 n.21 (citing *Vinatieri v.*

**[\*11]** (concluding that Appeals did not abuse its discretion in denying CNC status given that the taxpayer could make at least some payment on the outstanding tax liabilities).

The SO's refusal during the May 2, 2023, phone call to consider petitioner's request to submit additional evidence was not an abuse of discretion. "[W]hen an Appeals officer gives a taxpayer an adequate timeframe to submit requested items, it is not an abuse of discretion to move ahead if the taxpayer fails to submit the requested items." *Pough v. Commissioner*, 135 T.C. 344, 351 (2010). Petitioner had been on notice since he submitted his Form 12153 in 2021 that he would need to provide financial information. *See Shanley v. Commissioner*, T.C. Memo. 2009-17, 2009 WL 195929, at \*6. Furthermore, petitioner was informed that he needed to submit information about his finances in the letter dated November 22, 2022. And the SO informed petitioner on December 15, 2022, that the information he had provided about the equity in his properties was insufficient to justify a determination that he was unable to pay. Furthermore, her April 12, 2023, letter informed him of the amount of rental income the IRS assumed he received, and he still declined to provide adequate documentation of his income. The SO allowed petitioner more than two months to provide information; and more than five months elapsed between her first requesting the information and her telling him that she had made a determination. This was more than sufficient time for petitioner to submit any relevant information.

### C.     *Balancing Analysis*

The SO properly balanced the need for efficient tax collection against petitioner's interest in the least intrusive collection action necessary. In addition to concluding that petitioner could pay his liabilities from equity, the SO noted that petitioner neither offered nor agreed to any alternative collection method. Finally, she acknowledged that the levy was intrusive but found it to be necessary to efficiently collect the taxes owed.

### IV.     *Conclusion*

Finding no abuse of discretion, this Court will grant the Motion and sustain Appeals' determination related to the levy to collect petitioner's unpaid liabilities for the 2011, 2014, 2015, and 2017 tax

*Commissioner*, 133 T.C. 392, 402 (2009)). Because petitioner is not otherwise entitled to CNC status, this Court does not address this argument.

**[\*12]** years. This Court has considered all arguments made by the parties and, to the extent they are not addressed herein, deems them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*